## ZION'S SAVINGS BANK & TRUST CO. v. ROUSE et al.

No. 5588. Decided July 22, 1935. (47 P. [2d] 617.)

*Thomas & Thomas,* of Salt Lake City, for appellant.

*L. A. Miner,* of Salt Lake City, for respondents.

FOLLAND, Justice.

This case involves the right of set-off as between a mortgage debt and deposit in a bank. J. Elmer Rouse and his wife, Effie B. Rouse, on May 26, 1933, borrowed $857 from Zion's Savings Bank & Trust Co., hereafter referred to as the bank, on their joint and several demand note secured by chattel mortgage. The proceeds of the loan were represented by a cashier's check which was delivered to the

Rouses, indorsed by them, and delivered to and left with the bank. Two days later J. Elmer Rouse died. Letters of administration were issued August 11, 1933, to Effie B. Rouse on the estate of her husband. On August 15, 1933, the bank, without notice, offset the $857, proceeds of the loan of May 26, 1933, in part payment of a $13,000 note, secured by a real estate mortgage, which had been executed by Rouse and wife on August 20, 1925, and upon which there was then past due a balance of $10,300. The Rouses had on December 29, 1932, made another loan of $959.90 from the bank secured by a chattel mortgage.

The present suit, on two causes of action, was filed by the bank April 3, 1934, for recovery of the amount due on the notes of December 29, 1932, and May 26, 1933, and for foreclosure of the chattel mortgage given to secure the same. To the second cause of action, that of the loan of May 26, 1933, defendant pleaded a counterclaim against the bank for the $857 and interest, the proceeds of such loan, which had been left with the bank. By reply to the counterclaim the bank alleged it had applied the $857 on the real estate loan referred to above. Both parties filed motions for judgment on the pleadings. It was stipulated by both parties that judgment might be rendered on the pleadings with respect to the complaint, and judgment was entered in favor of the bank on both causes of action and for the foreclosure of the chattel mortgages. It was also stipulated that the court might enter judgment on the pleadings respecting the counterclaim as though it constituted a separate and distinct cause of action without regard to the complaint filed by the bank. The court thereupon made and entered judgment for the defendant on her counterclaim. The bank appeals on the judgment roll.

The single question involved in the appeal is: Did the bank have the right to set off the $857 which it owed the Rouses, against the $13,000 secured note, on which the Rouses still owed $10,300, and did its action in making such application constitute a defense to the counterclaim?

We start with two principles or theories, seemingly at war with each other; the one, that composition takes place between two debts by mere operation of law as soon as they exist simultaneously to the amount of the respective sums, where the debts are equally liquidated and de- ■ mandable, under circumstances that, if one had brought an action against the other, a counterclaim could have been set up.

This is a well-recognized principle of the law, applicable generally unless affected by statute, and finds expression in R. S. Utah 1933, 104-9-4, as follows:

"When cross demands have existed between persons under such circumstances that, if one had brought an action against the other, a counter-claim could have been set up, the two demands shall be deemed compensated so far as they equal each other, and neither can be deprived of the benefit thereof by the assignment or death of the other."

The second is that under a statute providing that there can be but one action for recovery of any debt secured by mort- gage the right of the bank to set off a matured indebtedness against the claim of a depositor does not permit of an indebtedness secured by a mortgage being used as an ■ offset. 5 Michie, Banks and Banking, 236. In this state there is such a statute, being R. S. Utah 1933, 104-55-1, as follows:

"There can be but one action for the recovery of any debt or the enforcement of any right secured by mortgage upon real estate or personal property, which action must be in accordance with the pro- visions of this chapter."

The last-mentioned statute has been construed by this court in cases which hold there can be but one action per- mitted for recovery of a debt secured by mortgage. *Bacon* v. *Raybould*, 4 Utah 357, 10 P. 481, 11 P. 510. That the se- curity must first be exhausted as to quantity and value be- fore other property of the debtor can be resorted to for pay- ment of the debt. *Salt Lake Valley Loan & Trust Co.* v. *Millspaugh*, 18 Utah 283, 54 P. 893. That the mortgaged

property constitutes a primary fund or thing to which the mortgagee must first resort for the discharge of the debt, and until this fund has been exhausted the mortgagee has no personal right of action against the mortgagor unless the mortgagor consents thereto. *Boucofski* v. *Jacobsen,* 36 Utah 165, 104 P. 117, 26 L. R. A. (N. S.) 898; *Jensen* v. *Lichtenstein,* 45 Utah 320, 145 P. 1036. The courts can impose a personal liability on the mortgagor only after having ordered sale of the property and after sale a deficiency appears. *Hammond* v. *Wall,* 51 Utah 464, 171 P. 148; *Howe* v. *Sears,* 30 Utah 344, 84 P. 1107. That it was the legislative intention to withhold the right of a mortgagee to a writ of attachment or a garnishment, in cases where the debt or obligation for which the action was brought was secured by mortgage on property, until after sale of the mortgaged property and the entry of a deficiency judgment. *Blue Creek Land & Live Stock Co.* v. *Kehrer,* 60 Utah 62, 206 P. 287. From these decisions it would seem to follow logically and naturally that a mortgagee, who could not reach by attachment or garnishment the assets of the debtor in the hands of a third party, could not for similar reasons apply personal credits in its own hands as an offset in reduction of the mortgage debt.

The right of a bank to apply a depositor's funds, held by it, to payment of his indebtedness, can exist only where each occupies the position of debtor and creditor, and where there exists mutual demands. 5 Michie, Banks and Banking, 218. The debt owing by the depositor must have matured. 5 Michie, Banks and Banking, 216. Both maturity and mutuality are essential to the validity of a set-off.

The status of the mortgage debt under a statute like R. S. Utah 1933, 104-55-1, construed as it has been by this court, is somewhat analogous to one not yet due, or one that lacks mutuality. True the debt is past due but the creditor is not yet in a position to obtain personal judgment against the debtor or to proceed to satisfy the debt

out of the debtor's assets other than the mortgaged property. Until the fund set up as security for the debt is exhausted and the deficiency, if any, is ascertained, the debts are on a different footing. They are not mutual personal obligations which may be set off against each other and compensated pro tanto.

In other jurisdictions there are two lines of authority supporting the conclusions we have reached. The Massachusetts rule is that stated in 5 Michie, Banks and Banking, 235:

"It is said that a bank can not apply the deposits of the debtor to the payment of his matured indebtedness if that indebtedness is sufficiently protected by collateral security."

The cases cited in support of this statement do not disclose that the court is influenced by any statutory provision similar to section 104-55-1 of our Code. *Prudential Realty Co.* v. *Allen, Commissioner of Banks,* 241 Mass. 277, 135 N. E. 221, 25 A. L. R. 935; *Furber* v. *Dane,* 203 Mass. 108, 109, 89 N. E. 227; *Farmers' Nat. Bank* v. *McFerran,* 11 Ky. Law Rep. 183.

The following is from 5 Michie, Banks and Banking, 236:

"Under a statute providing that there can be but one action for the recovery of any debt secured by a mortgage, the right of a bank to set off a matured indebtedness against the claim of a depositor or his creditor does not permit of an indebtedness secured by a mortgage being so used as an offset."

The cases cited in support of the statement are from California, which state had identical statutory provisions to ours, in fact our provisions were taken from the California Code. *McKean* v. *German-American Sav. Bank,* 118 Cal. 334, 50 P. 656; *Marble Co.* v. *Merchants' Nat. Bank,* 15 Cal. App. 347, 115 P. 59; *First Nat. Bank* v. *Coplen,* 39 Cal. App. 619, 179 P. 708; *Gnarini* v. *Swiss American Bank,* 162 Cal. 181, 121 P. 726; *Gnarini* v. *Banca Svizzera Americana,* 39 Cal. App. 200, 178 P. 532.

*In McKean* v. *German-American Sav. Bank,* supra, the holding was that a bank having mortgage security for a

debt must first exhaust that security before it can apply in reduction or cancellation of the debt any money on deposit with it belonging to the debtor.

In *Moore* v. *Gould,* 151 Cal. 723, 91 P. 616, 619, plaintiff brought suit to foreclose two mortgages of real estate and a pledge of stock in a corporation. Defendants counterclaimed, inter alia, for an indebtedness claimed to be owing the mortgagor by mortgagee. Section 440 referred to by the court is the same as our section 104-9-4. The court said:

"Is this a case of cross-demands which may be mutually compensated under this section? We think not. The plaintiff was suing on an indebtedness secured by mortgage, an indebtedness which could be recovered only by means of the action of foreclosure prescribed by section 726 of the Code of Civil Procedure. In such action the mortgaged premises must first be applied to the satisfaction of the debt, and there is no personal liability on the part of the mortgagor unless the security shall prove insufficient to satisfy the debt. The land is made primarily liable for the payment of the obligation, and the mortgagor can be called on to pay only where the proceeds of a sale of the land are insufficient. *Bartlett* v. *Cottle,* 63 Cal. 366; *Biddel* v. *Brizzolara,* 64 Cal. 354, 30 P. 609; *Crisman* v. *Lanterman,* 149 Cal. 647, 87 P. 89 [117 Am. St. Rep. 167]. For this reason it has been held that in an action upon a simple contract debt (a bank deposit) the defendant cannot set off against such debt a liability of the plaintiff secured by mortgage. *McKean* v. *German-American Sav. Bank,* 118 Cal. 334, 50 P. 656. The two claims, said the court, could not be deemed compensated under section 440, because 'the action of respondent for the deposit, and the right of action of appellant to foreclose its mortgage, are not cross-demands as contemplated by that section.' In that case the action was brought by the holder of the unsecured indebtedness, and the defendant sought to set up a debt secured by mortgage. Here the plaintiff sues on the mortgage, while the defendant relies on a simple debt as a cross-demand. But this difference does not make the principle of the McKean Case any less applicable here. If the demands, at their inception, were of such a nature that they were compensated, such compensation affected both parties alike. The rights of the parties under section 440 are necessarily mutual. One claim could not be compensated, without the other being compensated to the same extent. If the existence of the mortgage debt in favor of plaintiff was not available to reduce the amount of Gould's claims, his claims had no greater effect in discharging the mortgage debt."

The reason for this rule is that given in 4 Cal. Jur. 270:

"The reason of the rule which gives to banks the right to appropriate deposits for the payment of the depositor's matured indebtedness does not apply where the bank has security for that indebtedness. The ordinary presumption that it is the depositor's intent to have his note discharged from his deposit does not exist where the note is so secured. It has been said to be but reasonable that when the legislature declared that there should be but one action to enforce a debt secured by mortgage, it did not mean that payment could be enforced against the consent of the mortgagor by giving a bank the right to enforce payment under a general banker's lien upon some other property, and that, too, without any legal proceedings whatever. The rule, therefore, is that a mortgagee bank must first look to the mortgaged premises as constituting a primary fund out of which the debt secured by the mortgage must be paid, and that mortgage security must be exhausted before it can apply in reduction or cancellation of the debt any money on deposit with it belonging to the debtor."

See 18 Cal. Jur. 394; also 23 Cal. Jur. 254.

Counsel for appellant in a well-argued brief attempts to destroy the authoritativeness of the California and Massachusetts cases, but we are disposed to rely on these cases notwithstanding the criticism, especially because they support the doctrine we think must follow logically from our previous decisions.

Counsel remind us that the California Legislature in 1927 (St. 1927, p. 1620) amended section 438 (same as our 104-9-2) by adding a proviso that the right to

"maintain a counterclaim shall not be affected * * * by the fact that the action is brought, or the counterclaim maintained, for the foreclosure of such security."

So far as we are informed, there has been no decision by an appellate court in California since the amendment involving the question of set-off. In a recent case, *Terry Trading Corporation* v. *Barsky*, 210 Cal. 428, 292 P. 474, 477, involving other issues, the scope of the amendment was discussed:

"All of the other limitations were abolished by this amendment, and an intent on the part of the Legislature to avoid multiplicity of

suits and to have all conflicting claims between the parties settled in a single action was most clearly manifested. In the instant case, obviously, both the claim for damages and the demand that plaintiff account for sums collected and not credited on defendant's obligation tend to diminish or defeat plaintiff's recovery. Under the amendment it is not necessary that there be any connection between the cause of action set up in the complaint and that which forms the basis of the counterclaim. Indeed, the statute contemplates the pleading of unrelated matters as counterclaims by providing that 'the court may, in its discretion, order the counterclaim to be tried separately from the claim of the plaintiff.' "

The New York court held to the view that an offset is permissible under circumstances similar to those here, but its decision is based on the fact that in that state the creditor has the right to sue the debtor on a secured debt without first having recourse to the pledged security. *Kress* v. *Central Trust Co.*, 153 Misc. 397, 275 N. Y. S. 14. The same is true of Texas. *Harper* v. *First State Bank of Grand Prarie* (Tex. Civ. App.) 3 S. W. (2d) 552.

*Mitchell* v. *Dreher*, 150 S. C. 125, 147 S. E. 646, is cited as an authority in point to the effect that offset should be allowed. It does not appear from the decision whether or not South Carolina has a statute like ours requiring the creditor to first exhaust the security in case of mortgage debt, although appellant has argued that the construction given the statute makes it in effect the same. In that case, however, the debtor died and his administrator sold the personal property pledged to payment of the bank's debt and he paid the bank out of the proceeds of the sale and the amount on deposit which had been previously transferred by the bank to the account of the administrator. The court approved what the administrator did, and said that the bank was entitled to the proceeds of sale of the mortgaged chattels and was also entitled to set off the credit deposit balance against the note it held. No reason was given for the statement that the bank was entitled to offset the credit balance against the note it held. The bank did not apply the deposit on the mortgage debt or claim the right to do so, but merely trans-

ferred the credit to the administrator who in turn paid the debt to the bank after sale of the security and a deficiency appeared. The statement regarding offset was merely argument and not a decision.

Under our statutes the bank was not in a position to apply the amount of defendant's deposit on the mortgage loan until after exhaustion of the security leaving a balance due and unpaid for which deficiency judgment could be entered.

In view of our disposition of this issue, the other questions argued need not be discussed.

The judgment of the district court of Salt Lake county is affirmed, with costs to respondent.

ELIAS HANSEN, C. J., and EPHRAIM HANSON and MOFFAT, JJ., concur.

WOLFE, Justice (concurring specially).

I concur. I have questioned the doctrine which has long been the law of this state and upon which the prevailing opinion rests, to the effect that a mortgagee would be compelled to resort first to his security before he could come against general assets of the mortgagor. I questioned whether that doctrine was a necessary or even a logical result of our section 7230, Comp. Laws Utah 1917, now carried as section 104-55-1, R. S. Utah 1933. I had doubt whether that section which provided that there could be but one action for the recovery of any debt or enforcement of any right secured by mortgage on real estate or personal property should be pushed beyond the direct import of its language. That import as I conceived it was that if the holder of the note secured by the mortgage brought an action on the note alone without seeking to foreclose the mortgage, he lost all right to go back and foreclose the mortgage. The statute appears not to preclude a choice. I had thought that that section meant only that a person could either forego the security and bring an action on the note,

or bring an action on the note and at the same time foreclose the security, but that he could not have two actions; one to take a chance on the note by executing on a judgment obtained thereon, and, if that did not suffice, then to have the mortgage foreclosed. For that reason, I have, in the study of this case, taken such time as was available to re-examine the principle that a person must first resort to the security before he can come against any of the other assets of the maker of the note. My exploration has been by no means exhaustive, but as far as I can determine by a cursory examination, the doctrine seems to have been first announced in the case of *Salt Lake Valley Loan & Trust Co.* v. *Millspaugh*, 18 Utah 283, 54 P. 893. Before that, in the case of *Bacon* v. *Raybould*, 4 Utah 357, 10 P. 481, 11 P. 510, the court held that the mortgagee could not bring an action on the note, and sue out a writ of attachment based on the affidavit that the security had been rendered nugatory by the act of the defendant (one of the requirements of the affidavit for a writ of attachment under the law as it stood in the compilation of 1876 when the plaintiff having the mortgage sued out a writ of attachment) and then later bring an action to foreclose his mortgage. But that case did not pronounce the doctrine that the security could not be waived and an action brought on the note alone. It was apparently in the Millspaugh Case that that doctrine was first announced in this state. In the same Utah volume, page 11, 54 P. 892, 72 Am. St. Rep. 765, is contained the case of *Mallory* v. *Kesler*, in which it was held that an action at law could be maintained for a deficiency after sale under a power contained in a trust deed. The opinion there states, referring to section 3460, Comp. Laws Utah 1888, which is as respects the requirement of one action the same as our section 104-55-1, R. S. 1933, as follows:

"The object of the statute doubtless is to compel the mortgagee to exhaust his security before having recourse to the general assets of the debtor. The balance or deficiency, after it has been properly ascertained, whether by sale under a power or by foreclosure in equity constitutes a subsisting indebtedness, as well as did the original debt."

We need not be concerned about the holding in the Kessler Case as to permitting another action to be brought for a deficiency. The difference in the laws relating to the foreclosure of mortgages in the compilation of 1888 as compared with the later enactments in that regard which is the ancestor of our present chapter 55, R. S. 1933, may sufficiently account for the holding in the Mallory decision as compared to the later decisions. We are calling attention to the Mallory Case because it did express the thought that the purpose of the statute was to require the mortgagee to first exhaust the security before recourse to the general assets of the debtor. But the first definite holding which could not be said to be dicta was contained in the Millspaugh Case, supra. This case seems to be founded upon the case of *Barbieri* v. *Ramelli et al.*, 84 Cal. 154, 23 P. 1086, where it was held that under section 726 of the California Code of Civil Procedure (which reads, as far as the requirement for a single action for the recovery of any debt secured by mortgage is concerned, exactly as our section 104-55-1), that even where at the time of the giving of the mortgage there were mortgages prior to the plaintiff's mortgage of such amounts as to take up the entire value of the property, the plaintiff was still compelled to foreclose his subsequent mortgage and come against the general assets of the defendant only by way of a deficiency judgment.

Since the Millspaugh Case, the doctrine has been reiterated in the case of *Boucofski* v. *Jacobsen,* 36 Utah 165, 104 P. 117, 26 L. R. A. (N. S.) 898, and subsequent decisions of this court so that it is the law of this jurisdiction. Considering that section 7230, Comp. Laws Utah 1917, and its successor section 104-55-1, R. S. 1933, provide that the action "must be in accordance with the provisions of this chapter," I may not, even if I desired to, question the soundness of the doctrine. It not only provides there must be "but one action for the recovery of any debt or the enforcement of any right secured by mortgage upon real estate or personal property," but provides that it "must be

in accordance with the provisions of this chapter." When one examines the provisions of the chapter it is discovered that:

"Judgment shall be given adjudging the amount due, with costs and disbursements, *and the sale of the mortgaged property, or some part thereof, to satisfy said amount and accruing costs, and directing the sheriff to proceed and sell the same according to the provisions of law relating to sales on execution.*" (Italics supplied).

Section 7231, Comp. Laws Utah 1917, provides for the return of the sheriff showing the proceeds of the sale and for execution for the balance if the return shows there is not sufficient after the deduction of costs to pay the debt. Consequently, it transpires that not only must there be but one action for the recovery of the debt, but that the judgment obtained in said action must first provide for the sale of the security, unless proper allegation and proof is made that the security has become valueless, and that the only personal judgment that can be obtained is a deficiency judgment. This is a judgment obtained in the one action according to the provisions of that chapter and in no other way.

The consequence is that not only is the law of our state settled in regard to the requirement that the holder of a mortgage on real estate or personal property must first exhaust that security before he can come against the general assets of the debtor, but as I see it there is no escape from the logic of that holding. This being so, it is decisive of the instant case. The principle that one must exhaust the security before coming against the general assets of the debtor results in making the security, for all practical purposes, the primary debtor. This is an apt, if not an accurate, way of expressing the situation. It is therefore the same as if a creditor had one primarily and another secondarily liable to him and he applied a debt that he owed to the one secondarily liable upon the debt which the one primarily liable owed him. Certainly this could not be done under section 104-9-4, R. S. 1933. If the bank could reach out and apply

the $857 owed by its depositor Rouse to its secured indebtedness it would, in effect, be coming against the general assets of Rouse before exhausting its security. This is what the law says cannot be done. Of course, Rouse himself could have compelled the bank to apply the credit because nothing can prevent the debtor of a secured debt from making payment when payment is due. He can either give cash or he can apply as payment what the secured creditor owes him. This is by way of payment and not by way of set-off. As I see it, therefore, there is no escape from the logic of the prevailing opinion that a secured creditor cannot control a credit against him belonging to his debtor so as to require it to be offset or offset it himself against his credit, but his unsecured creditor who is also his debtor under the secured debt may, if he desires, offset his unsecured credit as payment as far as it will go to pay off the secured debt.