Roger A. JENSEN, Trustee for the Estate of Jim Uhlenhopp a/k/a James K. Uhlenhopp, d/b/a Uhlenhopp Livestock Buying and Trucking, Appellant,

v.

STATE BANK OF ALLISON, Appellee.

No. 74–1696.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1975.

Decided June 6, 1975.

John L. Butler, Eldora, Iowa, for appellant.

Raymond P. Drew, Hampton, Iowa, for appellee.

Before HEANEY and WEBSTER, Circuit Judges, and NANGLE, District Judge.[*]

WEBSTER, Circuit Judge.

The trustee of the bankruptcy estate of James K. Uhlenhopp appeals from the judgment of the District Court[1] upholding a setoff by the State Bank of Allison against funds of the bankrupt on deposit with the bank in satisfaction of an existing debt to the bank.

Prior to 1970, James K. Uhlenhopp and his wife Judy maintained a checking account at the State Bank of Allison, primarily for their personal use. In May, 1970, Uhlenhopp, who was in the livestock and trucking business, began using the account for business purposes. Shortly thereafter, Uhlenhopp borrowed money from the State Bank of Allison. The loans were evidenced by promissory notes in the amounts of $8,890.62 and $11,217.60 payable October 1, 1970, and December 24, 1970, respectively, and were secured by agreements granting the bank a security interest in the cattle purchased. Each of the notes contained a clause stating that the due dates could be accelerated any time the bank felt insecure. The bank filed financing statements at the local recording office.

On August 19, 1970, the State Bank of Allison learned that the State Bank of Dumont had filed a financing statement which claimed a security interest in Uhlenhopp's property, including after-acquired property. This financing statement had been filed before that of the State Bank of Allison. Deeming itself insecure, the State Bank of Allison accelerated Uhlenhopp's notes to make them payable immediately. It then debited Uhlenhopp's checking account for the full amount of the loans plus interest. Uhlenhopp filed a petition for bankruptcy on September 16, 1970.

Roger A. Jensen, the trustee of Uhlenhopp's estate, brought this action in the District Court to recover the full amount set off from Uhlenhopp's account. The complaint charged that the setoff constituted a voidable preference under § 60 of the Bankruptcy Act, 11 U.S.C. § 96, and, alternatively, was a wrongful conversion under Iowa law.

Following trial of the case, the District Court held that the setoff did not constitute a preference because the trustee had not shown that the bank knew Uhlenhopp was insolvent at the time it debited his account or that he was in fact insolvent at that time. The District Court also found that since the bank had acted within its rights in accelerating the notes and performing the setoff, there was no common law conversion.

The trustee appeals from the dismissal of his complaint, contending that the setoff was a voidable preference and that the bank illegally converted Uhlenhopp's funds. We affirm the judgment of the District Court.

---

[*] The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

[1] The Honorable William C. Hanson, Chief Judge, United States District Court for the Southern District of Iowa, sitting in the Northern District of Iowa.

## I.

 Under the Bankruptcy Act, no voidable preference[2] is ordinarily created when a bank sets off funds in an account of general deposit[3] with it against a debt owed to it by the depositor. *Farmers Bank v. Julian*, 383 F.2d 314, 324 (8th Cir.), *cert. denied*, 389 U.S. 1021, 88 S.Ct. 593, 19 L.Ed.2d 662 (1967), wherein we said:

> Section 68(a) of the Bankruptcy Act, 11 U.S.C. § 108 applies and allows a setoff to [a] Bank unless the account has been accepted or built up for the real purpose of permitting the Bank to obtain a preference by way of setoff of the account. A bank account at the time of filing the petition in bankruptcy is a debt due to the bankrupt from the bank, and in the absence of fraud or collusion between the bank and the bankrupt, the bank may set the account off against any indebtedness owed it by the bankrupt. * * * Section 68(a) of the Bankruptcy Act did not create the right of setoff but it 'recognizes this right, and it cannot be taken away by construction because of the possibility that it may be abused.' [*sic*] as it 'would precipitate bankruptcy and so interfere with the course of business as to produce evils of various and far-reaching consequence'. * * *

> The bank has the right to set off deposits against indebtedness even though the bankrupt is insolvent at the time of setoff and before the petition in bankruptcy is filed. [citations omitted][4]

*See generally* 4 J. Moore, Collier on Bankruptcy ¶ 68.15—.19 (1971).[5]

 There was no evidence that Uhlenhopp's account had been accepted or built up in order to permit the bank to obtain a preference. The account was one of long-standing. Uhlenhopp began using the account for his livestock business when he began to borrow money from the bank to purchase cattle.[6] The cattle loans were secured by the cattle themselves, and there is nothing in the record to show any kind of build-up in the bank account in order for Uhlenhopp to make a preferential payment to the bank during a period of insolvency. In fact, there is evidence that the bank, without Uhlenhopp's knowledge, deferred posting of some checks drawn

---

2. A voidable preference arises under § 60(a)(1) of the Bankruptcy Act, 11 U.S.C. § 96(a)(1):

 A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

3. A checking account is an account of general deposit. *E. g.*, *Kruger v. Wells Fargo Bank*, 11 Cal.3d 352, 113 Cal.Rptr. 449, 521 P.2d 441 (1974).

4. Section 68(a) of the Bankruptcy Act, 11 U.S.C. § 108(a), provides:

 In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

5. The District Court found that while the bank account was in the names of Uhlenhopp and his wife, all of the funds were from Uhlenhopp's business and that the setoff did not involve a third party. This finding is supported by the evidence and appellant's assertion of an irregular set. ᶜᵉ as a preference on this ground is without merit.

6. It is precisely this type of business relationship which justifies the special position which a bank may occupy by reason of its right of setoff.

 [A]s the depositor is indebted to the bank upon a demand which is due, the funds in its possession may properly and justly be applied in payment of such debt, and it has therefore a right to retain such funds until payment is actually made. *The lien is given upon the theory that any credit the bank extends to its customer by way of loan or overdraft is given on the faith that money or securities sufficient to meet the debt at its maturity will come into the possession of the bank to discharge the same.*
 *Olsen v. Harlan National Bank*, 162 N.W.2d 755, 760 (Iowa 1968) [Emphasis in original].

against the account in order that there be sufficient funds in the account to cover the setoff. There was "absolutely no evidence of any collusive or prearranged plan of action between [Uhlenhopp] and the Bank to build up this account." *See Farmers Bank v. Julian, supra,* 383 F.2d at 325.

Accordingly, appellant's contention that the State Bank of Allison's setoff of Uhlenhopp's checking account was a voidable preference must fail.

## II.

■ The claim of conversion presents a closer issue. Iowa law defines a conversion as "any distinct act of dominion or control, wrongfully exerted over the chattels of another in denial of his right thereto." *E. g., Goeman v. Live Stock National Bank,* 238 Iowa 1088, 29 N.W.2d 528, 531 (1947).

■ The relationship between a bank and its depositor is that of debtor-creditor. *E. g., Andrew v. Union Savings Bank & Trust Co.,* 220 Iowa 712, 263 N.W. 495 (1935); 10 Am.Jur.2d *Banks* § 339 (1963); 9 C.J.S. *Banks & Banking* § 267c (1938). As a general rule there can be no conversion of an ordinary debt. *See* W. Prosser, Handbook of the Law of Torts § 15, at 82–83 (4th ed. 1971); Restatement (Second) of Torts § 242, comment f (1965). Before applying this principle of law, however, we are bound in this case to consider whether the unseemly conduct of the bank transformed the routine process of setoff into the tortious act of conversion.

The bank gave no notice of its intention to accelerate its notes and to apply the bank account to discharge the debt, which was already secured by purchase money security interests. Instead, stampeded by the thought that it might become embroiled in a dispute with one of its friendly correspondents, the Bank of Allison decided to deem itself insecure and satisfy the notes through Uhlenhopp's bank funds rather than the chattel security. There is no way for us to know to what extent such harsh and unilateral action may have contributed to Uhlenhopp's bankruptcy, which followed in its wake, and that question is not before us.

■ It is, however, well settled that a bank has a right to set off funds deposited with it in an account of general deposit against a debt owed it by the depositor if the debt is mature or, if the debt is not mature, if the depositor is insolvent. *E. g., Olsen v. Harlan National Bank,* 162 N.W.2d 755, 759 (Iowa 1968); 9 C.J.S. *Banks and Banking* § 296 (1938); 10 Am.Jur.2d *Banks* §§ 666–70 (1963).[7] Here the debt was mature at the time of the setoff if the bank had properly accelerated the due date of Uhlenhopp's loans.

The Iowa statute applicable to acceleration clauses, I.C.A. § 554.1208 (1967), provides:

A term providing that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral 'at will' or 'when he deems himself insecure' or in words of similar import shall be construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised.

---

**7.** While appellant contends both that Uhlenhopp was insolvent at the time of the setoff and that the bank knew of this insolvency, he has made no effort to show that Uhlenhopp's assets exceeded his liabilities—the test of insolvency set forth in the Bankruptcy Act, 11 U.S.C. § 1(19). Appellant relies solely upon "float" in Uhlenhopp's checking account since the time of the setoff. Accordingly, the finding of the District Court that there is insufficient evidence in the record to conclude that Uhlenhopp was insolvent at the time of the setoff is not clearly erroneous. *See Farmers Bank v. Julian,* 383 F.2d 314, 326 (8th Cir.), *cert. denied,* 389 U.S. 1021, 88 S.Ct. 593, 19 L.Ed.2d 662 (1967) (test for insolvency under Bankruptcy Act is not inability to meet current obligations, but is the state of having liabilities exceed assets); *Dinkelspiel v. Weaver,* 116 F.Supp. 455 (W.D.Ark.1953).

■ Good faith is presumed when a creditor accelerates a debt. *Sheppard Federal Credit Union v. Palmer*, 408 F.2d 1369 (5th Cir. 1969) (applying Texas law). While the bank's judgment in deeming itself insecure upon discovering a prior filed financing statement is clearly open to question, and its heavy-handed treatment of its customer without prior notification is cause for dismay, we cannot say that the District Court's finding of good faith is clearly erroneous. *See* Fed.R.Civ.P. 52(a).[8]

■ While notice to the debtor is generally not required before a debt can be accelerated, the holder of an instrument who seeks to accelerate its maturity date must take some positive action to exercise his option to declare payments due under an acceleration clause in the instrument, to avoid waiving his rights to do so. *E. g.*, *Weinrich v. Hawley*, 236 Iowa 652, 19 N.W.2d 665, 667–68 (1945), *citing Swearingen v. Lahner*, 93 Iowa 147, 61 N.W. 431 (1894); *Moore v. Crandall*, 146 Iowa 25, 124 N.W. 812, 814 (1910). Here the setoff constituted sufficient affirmative action. *See Wentland v. Stewart*, 236 Iowa 661, 19 N.W.2d 661 (1945) (affirmative action required, declaration of intention insufficient); *Weinrich v. Hawley, supra,* (commencement of suit sufficient affirmative action); *Barnett v. Hitching Post Lodge, Inc.*, 101 Ariz. 488, 421 P.2d 507 (1966) (foreclosure of deed of trust and application of proceeds to note along with filing of claim sufficient affirmative action to accelerate debt); *Santini v. Fritkin*, 240 Md. 542, 214 A.2d 578 (1965) (foreclosure on collateral sufficient); *Smith v. Davis*, 453 S.W.2d 340 (Tex.Civ.App.1970) (filing of suit constitutes sufficient affirmative action to accelerate debt). *See generally* Annot. 5 A.L.R.2d 968, § 4 (1949). The debt was therefore mature at the time of the setoff.

■ The only remaining question is whether the bank was required to exhaust the collateral in which it retained a security interest before performing the setoff. The Iowa courts have not addressed the question, and in view of substantial majority authority to the contrary, we decline to assume that Iowa would adopt the rule proposed by appellant that a bank must first exhaust its collateral before setting off funds it has on deposit. The Washington Court of Appeals recently considered the question in *Allied Sheet Metal Fabricators, Inc. v. Peoples National Bank*, 10 Wash.App. 530, 518 P.2d 734, *cert. denied,* 419 U.S. 967, 95 S.Ct. 231, 42 L.Ed.2d 183 (1974):

> Allied argues, however, that the foregoing general rule permitting a setoff in the case of a demand note does not apply until after the bank exhausts its primary collateral security, and Peoples failed to do this. In this regard, Allied relies primarily upon an early California case, *McKean v. German-American Sav. Bank*, 118 Cal. 334, 50 P. 656 (1897); however, *McKean* states a minority view, and we decline to follow it. The position adopted by the majority of modern jurisdictions is well expressed in *Olsen v. Valley Nat'l Bank*, 91 Ill.App.2d 365, 371, 234 N.E.2d 547, 550 (1968), as follows:
>
> > A bank should not be deprived of its right of set-off simply because it has the foresight to obtain collateral in exchange for obligations owed to it. The majority rule, including Illinois, is founded on the rationale that a creditor is able to pursue any one of a number of remedies against a debtor until the debt is satisfied. The minority rule is based upon the rule or statute that there is but one action for the recovery of a debt which is secured by collateral.
>
> Although there appears to be no Washington authority directly in point, we are persuaded that the better reasoned view is that expressed in *Olsen* which recognizes the multiple remedies of a creditor, and therefore we apply that rule to the case at bar.

---

8. The record does not indicate whether the State Bank of Allison had taken those steps required of it under I.C.A. § 554.9312 (1967) to insure that its purchase money security interest in Uhlenhopp's cattle had priority over all other security interests in the cattle.

518 P.2d at 739; *accord, Keller v. Commercial Credit Co.*, 149 Or. 372, 40 P.2d 1018 (1935) (prevailing view is that collateral need not be exhausted before setoff); *see Kress v. Central Trust Co.*, 153 Misc. 397, 275 N.Y.S. 14 (1934), *aff'd,* 246 App.Div. 76, 283 N.Y.S. 467 (1935), *aff'd,* 272 N.Y.S. 629, 5 N.E.2d 365 (1936) (in accord with majority rule); *Harper v. First State Bank*, 3 S.W.2d 552 (Tex.Civ. App.1928) (in accord with majority rule); *see* Annot. 96 A.L.R. 1240 (1935).[9] No double advantage was gained by the bank's resort to setoff rights; the bank promptly released its security interest in the cattle.

We therefore uphold the conclusion of the District Court that the bank's setoff did not amount to wrongful conversion under Iowa law. The judgment is affirmed.

---

**9.** With the exception of Massachusetts, *see Forastiere v. Springfield Institute for Savings*, 303 Mass. 101, 20 N.E.2d 950 (1939), and New Mexico, *see Melson v. Bank of New Mexico*, 65 N.M. 70, 332 P.2d 472 (1958) (McGhee, J., dissenting), those states adhering to the minority view do so because of statutes which permit only one form of action for the recovery of any debt. *See First Nat'l Bank v. Coplen*, 39 Cal.App. 619, 179 P. 708 (1919); *Zion's Savings Bank & Trust Co. v. Rouse*, 86 Utah 574, 47 P.2d 617 (1935). Iowa has no such statute and, indeed, permits a creditor to sue on the debt without first foreclosing on the security. *See In re Butterfield's Estate*, 196 Iowa 633, 195 N.W. 188 (1923); *Smoley v. Smoley*, 203 Iowa 685, 213 N.W. 229 (1927); I.C.A. § 654.4 (1950). *See generally Zion's Savings Bank & Trust Co. v. Rouse, supra* (states recognizing bank's right to setoff without exhausting collateral also allow any secured creditor to sue on the note without first exhausting the collateral). Appellant has cited us to no Iowa authorities or presented any compelling reasons why we should hold otherwise.