**BANK OF EPHRAIM, Plaintiff and Respondent,**

v.

**Halbert DAVIS et al., Defendants and Appellants.**

**No. 15349.**

Supreme Court of Utah.

June 16, 1978.

---

Donald J. Eyre, Jr., Nephi, for defendants and appellants.

Louis G. Tervort, Manti, for plaintiff and respondent.

MAUGHAN, Justice:

Defendant Davis appeals an order denying his motion to quash a writ of attachment. Plaintiff Bank, as defendant's mortgagee, had the writ issued to attach certain personalty of Davis'. The writ was issued prior to the foreclosure sale of realty belonging to defendant. It was subject, as security, to the terms of the bank's mortgage. The writ also suffered from other infirmities intrinsic to it, which are treated hereafter.

We reverse and remand with instructions to quash the writ. Costs to defendant Davis. All statutory references are to U.C.A., 1953, unless otherwise noted. All Rule references are to U.R.C.P., unless otherwise noted.

First, attachment is not appropriate where a debt is secured, since a mortgagee is compelled to exhaust his security before he can reach the general assets of his debtor. This court has consistently held since *Salt Lake Valley Loan & Trust Company v. Millspaugh* [1] that under the single action statute, 78–37–1, there can be but one action for the recovery of any debt secured by a mortgage. Thus the security must be exhausted as to quantity and value, before resort to other property of the debtor can be had, for the payment of the debt.

In *Zion's Savings Bank & Trust Co. v. Rouse*, [2] this Court explained the mortgaged property constituted a primary fund or thing, to which the mortgagee must first resort for the discharge of the debt, and until that fund has been exhausted the mortgagee has no personal right of action against the mortgagor, unless the latter consents thereto. The courts can impose personal liability on the mortgagor only after having ordered sale of the property; and, if after sale, a deficiency appears. There was a legislative intent a writ of attachment would not issue if the obligation were secured by a mortgage or lien upon property. [3] The status of a mortgage debt under 78–37–1 is somewhat analogous to one not yet due or one which lacks mutuality. Although the debt is past due, the creditor is not yet in a position to obtain personal judgment against the debtor, or to proceed to satisfy the debt out of the debtor's assets other than the mortgaged property.

. . . Until the fund set up as security for the debt is exhausted and the deficiency, if any, is ascertained, the debts are on a different footing. They are not mutual personal obligations which may be set off against each other and compensated pro tanto. [4]

A proceeding to foreclose a mortgage is not an action "upon any contract express or implied," i. e., the type of action upon which an attachment may issue under Rule 64C(a). The underlying purpose of the single-action statute is to preclude the creditor from waiving the security and suing directly on the contract to pay money and hold the debtor rather than the security primarily liable.

Additionally, the purpose of the statute prohibiting an attachment where the indebtedness was already secured is to prevent a secured creditor from attaching additional property and thus tying up more of the debtor's property than was necessary to secure the indebtedness. [5]

The Idaho statute interpreted here carries the same proscription as our Rule 64C.

The impropriety of the ancillary proceeding of attachment in the instant case is best illustrated by the Writ of Attachment and the Affidavit for Writ of Attachment. The writ recites the action was commenced by plaintiff *to recover from the defendant the sum of $59,996.96* with interest and costs of court. The writ requires attachment of all property of defendant located at Hal's Palace Cafe, not exempt from execution, or so much as may be sufficient *to satisfy plaintiff's demand; unless defendant gives security in a sufficient amount to satisfy plaintiff's demand.* The affidavit of plaintiff, by its President, states the amount of plaintiff's judgment is in the sum of $59,996.96, and only a portion of that is entitled to a first lien on the property. With other debtors, there are judgments in excess of $85,957.54. The total judgments are greater than the sums which can reasonably be expected at Sheriff's Sale and a deficiency judgment in favor of plaintiff will result.

The affiant further claimed, upon information and belief, defendant was about to remove the property in an attempt to avoid creditors; and unless the writ issued irrepa-

---

1. 18 Utah 283, 54 P. 893 (1898).

2. 86 Utah 574, 577–579, 47 P.2d 617 (1935).

3. See *Blue Creek Land & Livestock Co. v. Kehrer*, 60 Utah 62, 66, 206 P. 287 (1922).

4. At p. 579 of 86 Utah, at p. 619 of 47 P.2d.

5. *Blankenship v. Myers*, 97 Idaho 356, 544 P.2d 314, 328 (1975).

rable damage would result to plaintiff. Affiant stated the attachment was not sought to hinder, delay, or defraud any creditor of defendant; and payment of the indebtedness, as it related to the deficiency judgment, had not been secured by a mortgage lien upon real or personal property, situated in Utah. Affiant further stated the security, which plaintiff had upon real property, had become impaired, without any act of plaintiff; and would not cover the full amount of any judgments against it.

At the time the writ was issued, defendant was not personally liable to plaintiff for any sum and certainly not for $59,996.96, since the indebtedness was secured by a mortgage. The writ requires attachment of sufficient property to satisfy this sum unless defendant gives security in this amount. The effect of the writ is to give plaintiff double security. Plaintiff may not have recourse to defendant's general assets until the security is exhausted, and a deficiency judgment has been entered against him. After the deficiency judgment is entered, the creditor must proceed by execution. See 78–37–2 and Rule 69(a). By utilizing an attachment, plaintiff has attempted to bring an action on the note, and at the same time to foreclose the security; contrary to both 78–37–1 and Rule 64C(a).

Rule 64C, was not intended to be utilized when the indebtedness is secured by a lien or a mortgage, upon real or personal property, situated in this state. First, the mortgaged property constitutes the primary fund to discharge the debt. Second, until the fund is exhausted, the mortgagor is not personally liable, the existence or amount of indebtedness is unknown and unliquidated, until after sale and a deficiency judgment has been entered. All of which is inconsistent with an attachment, which is permitted in proper cases for a sum certain any time after filing the complaint, Rule 64C(a). Under Rule 64C(f)(1), the defendant, to secure a discharge of the attachment, must furnish a bond, with sufficient sureties, in a sum of not less than double the amount claimed by plaintiff. The condition of such

undertaking shall be, if plaintiff recovers judgment, defendant will pay the same, together with interest and all costs assessed against him; not exceeding the sum specified in the undertaking. The patent unfairness of this rule is obvious in a case where the defendant's indebtedness is secured, and personal liability, if any, is unknown.

■ Affiant further stated the security had become impaired and would not cover the full amount of any judgments against it. Thus plaintiff sought to bring its case within the exception of Rule 64C(a) which permits an attachment where "if originally so secured, that such security has, without any act of the plaintiff or the person to whom the security was given, become impaired; . . . ."

In *Paramount Insurance, Inc. v. Rayson & Smitley*,[6] the court interpreted a similar provision in N.R.S. 31.010: " . . . become valueless or insufficient in value to secure the sum due the plaintiff. . . . " The court stated:

The affidavit by counsel for Paramount, upon which the attachment was issued, stated only the sum by which the affiant believed the indebtedness exceeded the value of the security. It is a conclusory affidavit which affords no basis for a court to conclude that the security has in fact diminished in value from what it had when accepted by plaintiff as security, and, as directed by N.R.S. 31.010, has 'become valueless or insufficient in value to secure the sum due the plaintiff.' See *Barbieri v. Ramelli*, 84 Cal. 154, 23 P. 1086 (1890). We hold that an affidavit seeking issuance of a writ of attachment in a judicial foreclosure proceeding must not be merely conclusory and must contain an opinion of value by a witness qualified to express such an opinion. Furthermore, the affidavit must show that the security has decreased in value from the time the security interest attached. The affidavit relied upon in this case does not meet that test. . . .

**6.** 86 Nev. 644, 472 P.2d 530, 534 (1970).

In *Barbieri v. Ramelli*,[7] which incidentally was the authority for this Court in the *Millspaugh* case, note 1 supra, the court interpreted section 537, Code Civil Pro., which is similar to our Rule 64C(a). The court stated:

> . . . Section 537 refers to a case where the security has changed in the value it had when originally taken, and has so depreciated as to become of no value. It has no reference to a case where there has been no change in value. Having elected to take the security at the value it possessed when the mortgage was originally executed, no change in value having since occurred, he cannot be allowed to urge, to evade a compliance with the provisions of section 726, [California's single-action statute] that it has become valueless. . . .

Plaintiff's affidavit was inadequate to invoke the exception under Rule 64C(a), since it did not set forth any facts indicating the value of the security had decreased or been impaired since the time its security interest attached. Plaintiff's statement that the security was impaired, since it would not cover the full amount of any judgments against it, is not in accord with the meaning of the term "become impaired," under Rule 64C(a). It was incumbent on plaintiff to set forth facts indicating the security had, in fact, diminished in value since the time, it had been accepted by plaintiff as security.

Defendant is correct in his contention he was denied procedural due process when his property was seized under a writ of attachment which was issued without prior notice, hearing, or court supervision.

■ Although Rule 64A was not in effect at the time the attachment was issued, the law in effect was that which is now reflected in Rule 64A. The obvious purpose of this amendment was to provide procedural due process as required by the United States Supreme Court in the issuance of prejudgment writs of replevin, attachment, and garnishment.

In *North Georgia Finishing, Inc. v. Di-Chem, Inc.*[8] the Supreme Court reiterated its holding in *Fuentes v. Shevin*,[9] viz., any significant taking of property by the State is within the purview of the. Due Process Clause. The Court ruled a Georgia statute violated the Fourteenth Amendment, where an official seizure deprived a debtor of a significant property interest by a writ of garnishment issued by a court clerk; without notice or opportunity for an early hearing, and without participation of a judicial officer.

■ Rule 64C, without the modification provided in Rule 64A, has the same infirmities as the Georgia statute in the *Di-Chem* case. The writ is issuable on the affidavit of the creditor; the affidavit need contain only conclusory allegations; the writ is issuable by the court clerk without participation of the judge; and upon service of the writ the debtor is deprived of a significant property interest.

In the instant case, upon issuance and service of the writ of attachment, the defendant-debtor was deprived of a significant property interest. The constructive seizure by the sheriff, encumbered the property with the lien of the attachment and inhibited defendant's right to dispose or encumber his assets.

■ Finally, defendant contends the failure of the sheriff to file an inventory, with the return of the writ of attachment, rendered the proceeding void.

Rule 64C(h), provides:

> The officer must return the writ of attachment to the court within twenty days after its receipt, together with a certificate of his proceedings endorsed thereon or attached thereto. Such certificate shall contain a full inventory of the property attached. To enable him to make such return as to the debts and

---

7. 84 Cal. 154, 23 P. 1086, 1087 (1890).

8. 419 U.S. 601, 606, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975).

9. 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

credits attached he must request, at the time of service, the party owing the debts or having the credits to give him a memorandum stating the amount and description of each; and if such memorandum is refused, the officer must return the fact of refusal with the writ. [Emphasis supplied.]

Although there is authority to the contrary, the better ruling appears to be that a failure to file an inventory and return in compliance with mandatory statutory requirements renders the attachment proceeding void.[10]

The principle is illustrated in *Dickinson v. First National Bank of Cody Wyoming*,[11] wherein the court ruled an attachment proceeding is purely a statutory proceeding for the purpose of establishing a lien to aid in the collection of a debt, and the only way this lien can be established is by strictly following every provision of the statute. The court held that, under the law of North Dakota, it was necessary to make and file the inventory and return within twenty days from the time the property was seized; the failure to comply with this statute rendered the whole proceeding void.

As one of its sources of authority the court quoted Shinn on Attachment 231:

An inventory of the property seized is required by some statutes as one of the steps necessary to complete service and return of the writ, in which case there can be no lien acquired without such an inventory.

In the instant case there was a failure to comply with Rule 64C(h), thus plaintiff did not acquire a lien on the attached property.

For all of the foregoing reasons, the trial court erred by not quashing the writ of attachment.

WILKINS, J., concurs.

HALL, J., concurs and adopts the concurring remarks of CROCKETT, J.

CROCKETT, Justice (concurring separately).

It is in conformity with my sense of justice that under the circumstances in this case the attachment was improperly issued and I therefore concur in that ruling. However, I desire to state my own basis for that conclusion.

The plaintiff Bank's action to foreclose on the defendant's property is grounded upon the note and mortgage executed by the defendant and upon which the defendant was liable personally; and this would be so quite irrespective of whether security had been given or not.

It is my view that the entire loan and mortgage transaction should properly be regarded as imposing rights and duties on both the mortgagor and mortgagee. Where the mortgagor makes an express promise to pay, he is then under a personal obligation to pay. Ordinarily, a holder of a note secured by a mortgage would have the right to sue the mortgagor and hold him personally liable on the note alone, or to foreclose on the property, or to join such proceedings in one action. However, U.C.A. 78–37–2 has modified this by requiring that the holder of a note secured by a mortgage first exhaust the security before an ancillary attachment is permissible. U.C.A. 78–37–2 states that if:

. . . it appears from the return of the officer making the sale that the proceeds are insufficient and a balance still remains due, judgment therefor must then be docketed by the clerk and execution may be issued for such balance as in other cases; *but no general execution shall issue until after the sale of the mortgaged property and the application of the amount realized as aforesaid.*

Thus, if we looked to this statute alone, the creditor would have to rely on his security before resorting to the alternative of attachment.[1]

---

**10.** 6 Am.Jur.2d § 310, p. 778; 7 C.J.S. Attachment § 236, p. 409.

**11.** 64 N.D. 273, 252 N.W. 54, 93 A.L.R. 739 (1933).

**1.** *Jensen v. Lichtenstein*, 45 Utah 320, 145 P. 1036 (1915); *First National Bank of Coalville v. Boley*, 90 Utah 341, 61 P.2d 621 (1936).

Notwithstanding the foregoing, plaintiff Bank places reliance upon Rule 64C(a), U.R.C.P. which expressly allows an attachment where security is held " . . . if originally so secured, *that such security has* without any act of the plaintiff or person to whom the security was given, *become impaired*; . . . " (All emphasis herein added.) In reference to cases cited to the effect that attachment should not issue,[2] it should be noted that they are based on statutes which require that the security "has become valueless," rather than merely impaired. It should also be realized that our rule just quoted, authorizing attachment if the security had become impaired, became part of our law as of January 1, 1950, as part of the sweeping change brought about by the adoption of Utah Rules of Civil Procedure; and therefore cases decided prior to that time do not deal with the application of that rule.[3]

It is on the basis of what I state herein that I agree that plaintiff Bank did not meet its obligations under the law. It is true that its affidavit stated that the security had become impaired and would not cover the amount of its claim against defendant. Our Court has long held that such a statement of a conclusion is not sufficient to justify an attachment, but that the plaintiff must state with particularity, evidentiary facts which justify the issuance of such a writ.[4] The case of *Western Auto v. Gurnea*[5] is similar to the instant case in that on the day of filing the complaint the plaintiff also filed an affidavit for a writ of attachment stating that he was apprehensive of loss and alleging that the defendant was insolvent. The court held that the plaintiff must set forth facts justifying the issuance of a writ of attachment and affirmed the order dissolving the attachment. Similarly, in the present case, no such facts were stated to warrant the issuance of a writ of attachment.

Furthermore, the prejudgment remedy of attachment allows deprivation of the debtor's property and is therefore subject to the principle embodied in Rule 64A of U.R.C.P. which provides that before any prejudgment writ may be issued, notice and opportunity to be heard must be given to the adverse party. (Except in specific circumstances, not present here.) It also provides that the writ shall be issued only on written motion and pursuant to a written order of the court. It is true that this rule was amended effective November 1, 1972, and that the rule itself is therefore not specifically applicable here. However, the amendment of the rule was but a recognition of the necessity for observing due process in law in such proceedings, which requires both a notice to the debtor and a judicial determination of the propriety of the attachment before the debtor's property is taken.[6]

For the reason that plaintiff failed to meet the conditions above stated, I agree in the ruling that the writ of attachment should be quashed.

ELLETT, Chief Justice (dissenting).

This is an appeal from the refusal of the trial court to quash a writ of attachment. The facts are not in dispute.

---

**2.** See *Blankenship*, n. 5; *Barbieri*, n. 7; cited in main opinion.

**3.** See *Salt Lake Valley Loan & Trust Company*, n. 1; *Zions Savings Bank & Trust Co.*, n. 2; *Blue Creek Land & Livestock Co.*, n. 3; cited in main opinion.

**4.** *Bowers v. London Bank of Utah*, 3 Utah 417, 4 P. 225 (1884); *Deseret Nat. Bank of Salt Lake City v. Little, Roundy & Co.*, 13 Utah 265, 44 P. 930 (1896).

**5.** 73 Utah 423, 274 P. 863 (1929).

**6.** Article 1, Sec. 7 of the Utah Constitution provides that, "No person shall be deprived of life, liberty or property, without due process of law." Amendments 5 and 14 of the U.S. Constitution have similar provisions. See also: *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).

The plaintiff foreclosed a mortgage it held on real estate. On February 6, 1976, the date the judgment of foreclosure was signed, it caused an attachment to be issued whereby certain personal property of the defendant was seized by the sheriff. The sheriff made the defendant the keeper of the property and allowed him the use thereof. On April 12, 1976, the sheriff's sale of the mortgaged property was held, and it resulted in a deficiency judgment against the defendant.

Our statute[1] provides as follows:

If it appears from the return of the officer making the sale that the proceeds are insufficient and a balance still remains due, judgment therefor must then be docketed by the clerk and execution may be issued for such balance as in other cases; but no general execution shall issue until after the sale of the mortgaged property and the application of the amount realized as aforesaid.

It is thus clear that there was no judgment against the defendants prior to the sheriff's sale of the mortgaged realty. The defendant claims that the writ of attachment was issued in violation of Rule 64A, Utah Rules of Civil Procedure and is, therefore, invalid because it was issued without prior notice, hearing, or court supervision as required by the rule.

The answer to that claim is that Rule 64A, pertaining to prejudgment writs, was not in existence on February 6, 1976, the date of the issuance of the writ. The rule applicable at that time was Rule 64C, Utah Rules of Civil Procedure which provided:

The plaintiff, at any time after the filing of the complaint, in an action upon a judgment, upon any contract express or implied, or in an action against a nonresident of this state, may have the property of the defendant, not exempt from execution, attached as security for the satisfaction of any judgment that may be recovered in such action, unless the defendant gives security to pay such judgment as provided in subdivision (f) of this rule, by filing with the court in which the action is pending an affidavit setting forth the following: that the defendant is indebted to the plaintiff, specifying the amount thereof as near as may be over and above all legal set-offs and the nature of the indebtedness; that the attachment is not sought to hinder, delay or defraud any creditor of the defendant; *that the payment of the same has not been secured by any mortgage or lien upon real or personal property, situate or being in this state, or, if originally so secured, that such security has, without any act of the plaintiff or the person to whom the security was given, become impaired*; and alleging, but not in the alternative, any one or more of the following causes for attachment:

&ast; &ast; &ast; &ast; &ast; &ast;

(4) That the defendant has assigned, disposed of or concealed, or is about to assign, dispose of or conceal, any of his property with intent to defraud his creditors; . . . [Emphasis added.]

The bank's affidavit that was given as a basis for obtaining the writ stated:

. . . 5. That the amount of defendant's Judgment amounts to the sum of $59,996.96 and that only a portion of that amount is entitled to a first lien on the property.

6. That along with other debtors there are judgments totaling in excess of $85,957.54, plus accruing interest at a rate of 8% per annum or greater.

7. That the total judgments are greater than the sums which can reasonably be expected at Sheriff's Sale and a deficiency Judgment in favor of the Plaintiff will result.

8. That the affiant is informed and does believe that the defendant, Halbert Davis, is about to remove the said property in an attempt to avoid creditors, and that unless a Writ of Attachment issues irreparable damage will result to the plaintiff.

---

1. U.C.A., 1953, 78–37–2.

The bank claims that the rule in effect when the attachment was obtained was complied with and that the attachment was, therefore, properly issued. The bank further claims that the rights obtained under the writ would not be affected by a change in the rules.

The fair import of the language of the bank's affidavit is that the mortgage security has become impaired and that it is not sufficient to cover the amount of the indebtedness to the bank; and that the defendant has disposed of, or is about to dispose of, or conceal his property with the intent to defraud his creditors. Such allegations comply with the requirements of the rule in force at the time of the issuance of the writ. The defendant had permitted over $2,700.00 in accrued taxes to become a prior lien on the mortgaged property, thus impairing its value.

The defendant contends that under the holdings of the United States Supreme Court it is immaterial as to what the law used to be; that a prejudgment taking of personal property is prohibited. That may be what the Supreme Court would hold in a case depriving the owner of property without a chance first to be heard; but that is not this case.

Here, the sheriff merely attached the property and left it in the custody of the defendant. The defendant continued to use the property after the attachment in the same way that he used it prior to the attachment. He had ample notice that the property would be sold at a later date and that the proceeds would be applied in satisfaction of his debt if there was a deficiency judgment resulting from the sheriff's sale of the mortgaged property. In fact, he retained possession until June 29, 1977, when the court ordered him to deliver the property over to the sheriff.

In its rulings, the United States Supreme Court seems to have directed its animus to the state laws insofar as an owner was *deprived of custody.* Note the language in the case of *Fuentes v. Shevin*:[2]

We hold that the Florida and Pennsylvania prejudgment replevin provisions work a deprivation of property without due process of law insofar as they deny the right to a prior opportunity to be heard *before chattels are taken from their possessor.* [Emphasis added.]

The obvious cause for the desire to quash the writ is to allow for intervening rights claimed by relatives of the defendant. The rights of the plaintiff were established as of the date of the writ. If the writ is quashed, then subsequent liens will prevail over that of the plaintiff.

The defendant also attacks the validity of the writ because the sheriff did not file an inventory of the items attached with the court. Since the items were not taken from the possession of the defendant, the fault on the part of the sheriff ought not defeat the lien rights of the plaintiff. The defendant was present when the attachment was made and received a copy of the items which the sheriff attached. There can be no reason for quashing the writ.

The main opinion relies heavily on the Idaho case of *Blankenship v. Myers,* 97 Idaho 356, 544 P.2d 314, 328 (1975) for its position and states that "The Idaho statute interpreted here carries the same proscription as our Rule 64C." There appears to me to be a great difference between the Idaho statute and our Rule. The statute provides[3] that the affidavit must state "that such security . . . has become *valueless,*" before an attachment may be issued where there is security for the debt. Our rule merely provides " . . . that such security has . . . become *impaired*; . . . ." (Emphasis added.)

Under the Idaho law the attachment in the instant matter would be improper; but where it is only necessary to state that the security has become impaired as is the case in Utah the attachment is good. In the instant matter the security had become impaired and the affidavit so stated.

**2.** 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

**3.** Idaho Code, Sec. 8–502.

I would affirm the judgment of the trial court.