## SEABOARD FINANCE CO. v. SHIRE (BANK OF VERNAL, Garnishee).

No. 7299.   Decided May 2, 1950.   (218 P. 2d 282.)

See 9 C. J. S., Banks and Banking, sec. 299. Garnishment, contingency as affecting, see note, 134 A. L. R. 853. See, also, 4 Am. Jur. 625.

*Romney & Boyer*, Salt Lake City, for appellant.

*Critchlow, Watson & Warnock*, Salt Lake City, for respondent.

McDONOUGH, Justice.

Plaintiff and appellant brought suit against defendant, L. V. Shire to recover a total of $4,078.45 on three checks which had been dishonored by the Bank of Vernal. After filing complaint and issuing summons, plaintiff had a writ of garnishment served on the Bank of Vernal. The bank answered that it was not indebted to defendant on February 24, 1948, the date of service of the writ. Plaintiff traversed the answer of the garnishee. Judgment by default was obtained against the defendant L. V. Shire in the sum of $4,078.45. Trial was then had on the issues

raised by traverse of the answer of the garnishee bank. The trial court found that the garnishee was indebted to defendant in the sum of only $163.58 on the date of service of the writ and entered judgment accordingly. Plaintiff appeals from judgment rendered, claiming that on the date of service of the writ the evidence compels a finding that the garnishee was actually indebted in a much greater amount than found by the court. The garnishee cross-appeals as to the award of costs and the disallowance of storage charges incurred by the garnishee.

On December 3, 1947, defendant Shire borrowed $11,270 from the Bank of Vernal and executed a demand note therefor and a trust receipt on five 1947 Frazer Manhattan automobiles, and also executed and delivered a chattel mortgage. By the terms of the trust receipt, Shire agreed that as each car was sold the minimum sale price specified in the trust receipt should be held in trust for the bank and turned over to the bank. The chattel mortgage also contained a similar provision. The chattel mortgage was not filed for record until a week before the levy of the plaintiff's writ of garnishment on February 24, 1948. Defendant sold three of the cars held under the trust receipt, on December 22, 1947, January 6, 1948, and February 2, 1948. The proceeds of each of these sales in the sum of $2,504.84, was applied on the trust receipt account, so that after allowing for interest, on February 2, 1948, the principal balance on this account was $3,869.82. On that date, two of the cars remained unsold.

On January 22, 1948, defendant borrowed the further sum of $1,500 from the bank and gave the Bank of Vernal a note secured by chattel mortgage on certain accessories at defendant's place of business, which mortgage was also filed of record prior to levy of the writ of garnishment. On January 29, 1948, the bank also lent Shire $2,065 and took an unsecured demand note as evidence of such indebtedness.

On February 6, 1948, one of the officers of the bank learned that Shire had sold one of the two remaining Frazer cars covered by the trust receipt without delivering the proceeds to the bank. Thereupon the bank demanded from Shire the money, and Shire promised to have it in a couple of days. He advised the bank that he was making arrangements with plaintiff herein to take over some contracts. When the bank suggested that Shire's checking account at the bank be debited in the amount of the sale price of the missing car, Shire said he had some checks outstanding, and that he wanted to wait "until Tuesday" when he would settle the matter. It was subsequently learned that some of the accessories covered by the chattel mortgage given on January 22nd, were missing, and Shire reported that they had been attached to some cars which had been sold. The bank demanded that the value of these parts be paid to apply on the chattel mortgage indebtedness.

After a telephone conversation with the bank in which Shire was advised that some checks had been dishonored, he promised to come to Vernal and adjust matters. The bank on February 10th declined to honor any checks which would reduce the bank balance below, $2,504.84, which was the minimum sale price for the Frazer car sold for which Shire had not accounted for the proceeds. Checks totaling $4,313.25 were dishonored on February 11th. The checks issued to plaintiff herein were delivered to plaintiff by Shire on February 12th. On February 13, 1948, the bank charged Shire's account at the bank in the sum of $2,783.71, which was the entire credit balance on that date in his checking account, thus applying $278.87 in excess of the minimum sale price of the Frazer car sold by Shire. On February 13 or 14, there was delivered to the bank by Shire Motor Company checks aggregating $2,564.00. Another deposit in the sum of $25.90 left the credit balance on the ledger for the checking account as $2,605.56.

Sometime on February 14th, Shire left Vernal and departed from the state, and contact with him was subse-

quently lost. Consequently, on February 21, the bank applied $10.56 to interest and $1,800 to principal on the demand note dated January 29, 1948, reducing the balance of said unsecured note to $265.00. The bank also applied on February 21st, the balance of the checking account to the $1,500 chattel mortgage account, which, after crediting the amount due for interest reduced the principal by $795 or down to $705 balance.

The appellant contends that since the bank had security for the trust receipt account and also for the accessory chattel mortgage account, it could not apply any portion of the checking account toward payment of such accounts without first exhausting the security; and that inasmuch as the security was not exhausted on the date of levy of the writ of garnishment on February 24, 1948, the bank was actually on that date indebted to Shire in an amount which represents the aggregate of the $2,783.17 balance on February 13th plus the deposit of $2,605.56, less the amount of the unsecured note.

Appellant concedes that the bank could properly withhold and apply an amount equal to the principal and interest due on the unsecured note for $2,605. It disputes, as indicated hereinabove, the right of the bank to apply any part of the checking account toward the secured account. Appellant cites in support of its position, *Zion's Savings Bank & Trust Co.* v. *Rouse*, 86 Utah 574, 47 P. 2d 617. In that case the decedent had obtained 3 loans from the bank, one in 1925 which was secured by a real estate mortgage, one in 1932 secured by chattel mortgage, and one in 1933 also secured by chattel mortgage. The proceeds of the 1933 loan were left with the bank and after death of the debtor, this account was applied toward the real estate mortgage which was then past due, there having been no authorization for such application. On counter-claim defendants were allowed recovery of the amount of the proceeds of the 1933 loan which had been applied toward the

real estate mortgage indebtedness without authorization from either of the debtors. On appeal this court held in substance that there would be no personal liability for any deficiency until the security had first been exhausted.

The trust receipt account is, however, readily distinguishable from the secured claims in the *Rouse* case, at least with respect to the indebtedness of Shire on the cars which he had sold. Whether Shire authorized his checking account to be debited for the amount of the Frazer car which he sold, is immaterial. By the terms of the trust receipt and also by the terms of the chattel mortgage, Shire had a power to sell as trustee, but he had the obligation of turning over the proceeds of each sale up to the sum of $2,504.84 as each car was sold until the trust account was discharged. By the terms of the trust receipt he held the proceeds of sale in trust for the bank. True, with respect to the car unsold, the bank had no right to hold the car as security and still apply funds. When the fourth Frazier car was sold, the security with respect to such car was lost. There was substituted for such car the proceeds of sale. There was a trustee and beneficiary relationship with respect thereto. The bank was the beneficiary of an express trust, and as such a creditor whose security had been sold by the trustee to realize the proceeds. The bank had therefore, the right to debit the account of Shire for the amount of $2,504.84, although in this case the bank debited the full amount of the checking account to the trust receipt account, or applied the additional sum of $278.87. We shall refer to this item of $278.87 later.

On February 21, 1948, the bank debited the checking account in the then total amount of said account in the sum of $2,605.56 which had been deposited since February 13th, or since the bank had previously exhausted the checking account. With respect to the unsecured note dated January 29, 1948, in the principal sum of $2,-065 the bank could have applied such portion of the checking account as would have been sufficient to pay the prin-

cipal and interest. However, as far as bookkeeping entries are concerned, the bank applied only the amount necessary to pay the interest and $1,800 on principal, leaving a book-. keeping balance of $265.

At this point it is well to consider the language of the garnishment statute, Sec. 104-19-13, U. C. A. 1943:

"Every garnishee shall be allowed to *retain or deduct* out of the property, effects or credits of the defendant in his hands all demands against the plaintiff and *all demands against the defendant* of which he could have availed himself if he had not been summoned as garnishee, *whether the same are at the time due or not,* and he shall be liable for the balance only after all mutual demands between himself and plaintiff and defendant are adjusted, not including unliquidated damages for wrongs and injuries; *provided,* that the verdict or finding, as well as the record of the judgment, shall show in all cases against which party any counterclaim is allowed, if any is allowed, and the amount thereof." (Italics added.)

Since the bank answered as garnishee that it was not indebted to the defendant Shire, its answer could be successfully traversed if the bank had deducted from Shire's checking account sums which it was not legally entitled to deduct. That being so, with respect to $265 of the $278.87 applied on the trust receipt account in excess of the proceeds of sale of the fourth car, the bank was entitled to hold the $265 to extinguish the balance of the unsecured promissory note. Only $13.87 could be called into question with respect to applications on the trust receipt account and the unsecured note account. With respect to the fifth car, the bank had the car as security and it subsequently took possession thereof, and it was subsequently sold.

A more difficult question confronts us relative to application of a portion of the checking account to apply on the $1,500 note secured by a chattel mortgage on accessories. On February 21, 1948, just 3 days prior to levy of the writ of garnishment, the bank took $805 of the checking account, applying $10 on accrued interest and the balance of $795 on the principal indebtedness secured by mortgage, leaving

a ledger balance of $705 on the chattel mortgage note account. This application of funds was made on the due date of the chattel mortgage note, but no foreclosure proceedings had been instituted as of that date. On February 6, 1948, an officer of the bank found that some of the accessories described in the chattel mortgage estimated as over one-half thereof, were missing. Over objections of appellant he testified that Shire admitted that he had attached the missing accessories to cars which he had sold, and had thereby disposed of them.

The mortgage on the accessories was unlike the mortgage on the five Frazer cars, in that there was a prohibition against any sale of the accessories during the period of time the debt remained unpaid. A crop and livestock form of chattel mortgage was used, and many of the provisions thereof were wholly inapplicable to the nature of the chattels described. The mortgagor covenanted not to sell or dispose of the chattels without the written consent of the mortgagee during the period of time the obligation remained unpaid. It is conceded that no consent was given by the mortgagee. The mortgage also provided that in the event the mortgagor defaulted in payment or failed to perform any of the terms or covenants,

"or in case of material depreciation in the value of the property subject to the lien hereof; or if, for any cause, the security afforded hereby shall become inadequate"

or if for any cause the mortgagee deemed itself insecure, or the property or some part thereof were attached or levied upon, then the mortgagee should have the right without notice to take possession of the properties and to foreclose the mortgage by suit or by notice and sale, and in the event the proceeds of sale proved insufficient to pay costs, attorney fees, interest and principal, the mortgagor should pay any deficiency.

While there is evidence that some of the chattels had been converted by the mortgagor in connection with the

sale of cars to which certain of the mortgaged accessories were attached, there is no evidence as to amount nor as to value. The mortgage was a blanket mortgage to secure the entire debt of $1,500. The debt was not apportioned to any of the chattels.

The amount of deficiency which could be realized was a matter of future determination, and the prospective right to a deficiency judgment was an unliquidated claim. By the express terms of the garnishment statute, the garnishee is prohibited from offsetting "unliquidated damages for wrongs or injuries." In this case, the disposal of the accessories was a wrongful act on the part of Shire, but except for a right of action in tort for the conversion or impairment of the value of the security, the remedy available to the mortgagee consisted of the right of seizure and sale or foreclosure. The bank actually resorted to seizure and foreclosure sale, but foreclosure proceedings were initiated after the date of the levy of the writ of garnishment. There was no unsecured liquidated debt at the time the bank debited the checking account to apply $805 on the chattel mortgage note. Except where the mortgagee has contracted with the mortgagor to apply funds subject to withdrawal on the order of the mortgagor to the secured indebtedness of the mortgagor, there is no right to apply the account nor to hold such account until the security has first been exhausted so that the unpaid balance of the indebtedness is an unsecured debt.

The rule laid down in *Zion's Savings Bank & Trust Co.* v. *Rouse,* supra, is clearly applicable to the withdrawal of funds from the checking account to reduce the chattel mortgage debt. The trial court appears to have taken the view that the bank could withhold the funds, proceed to sell the chattels and thereafter apply in payment of the determined deficiency, if any, such portion of the balance of such account as would be required for that purpose. Such is not the law. The garnishment statute permits the garn-

ishee to retain or deduct all demands against the defendant of which he could have availed himself if he had not been summoned as garnishee,

"whether the same are at the time due or not, and he shall be liable for the balance only after all mutual demands between himself and plaintiff and defendant are adjusted, not including unliquidated damages for wrongs and injuries * * *."

Any possible liability for a deficiency judgment was then unliquidated. The extent to which the bank would be injured by any impairment of the chattel security, was not then ascertained.

While the bank took possession of the balance of the chattels prior to the date of levy of the writ of garnishment, it took no further steps to determine the deficiency for which Shire might be found to be liable for the missing chattels, until some time later when it commenced a foreclosure action. The garnishment statute does not authorize the garnishee to hold funds of the defendant until such time as the garnishee may be able to ascertain whether or not any deficiency may result upon foreclosure of a chattel mortgage. In this case the security had not been exhausted at the time the checking account was applied to reduce the chattel mortgage balance. The trial court found that Shire did not authorize the application of any part of the checking account on such secured indebtedness. There is nothing in the chattel mortgage given on the accessories to warrant the taking of any portion of the checking account and application of the fund to reduce the chattel mortgage account. Such chattel mortgage is wholly unlike the chattel mortgage on the five Frazer cars by the terms of which the defendant Shire was given a power to sell and to hold such proceeds for the bank.

It is contended on behalf of the garnishee defendant, respondent on appeal, that the disposal of some of the chattels constituted a conversion, and that the bank should be en-

titled to retain funds sufficient to assure indemnification. Unlike the trust receipt account secured by chattel mortgage on the five cars, in the case of the chattel mortgage on the accessories the debtor was not authorized to sell and therefore the disposal of the chattels which were attached to various cars which had been sold, amounted to a conversion. The debtor was liable therefor on an unliquidated tort claim. But disregarding the tortious feature of mortgagor's action in selling the accessories, the mortgagee's right under the terms of the mortgage, to have a deficiency judgment was an unliquidated claim and such claim was unliquidated at the time of the levy of the writ of garnishment. While reference has been made to recent California decisions which recognize the right of a bank to apply a deposit toward a secured claim, *Walters* v. *Bank of America Nat. Trust & Savings Ass'n,* 9 Cal. 2d 46, 69 P. 2d 839, 110 A. L. R. 1259, those decisions are predicated upon an amendment of the garnishment statute. Prior to such amendment, the California garnishment statute was identical in substance with our own statute hereinabove quoted. Prior to such amendment, the rule announced by the California courts was that a mortgagee must first exhaust the security by appropriate proceedings, and then if a deficiency is established, he can offset such deficiency against the account of the debtor. See *McKean* v. *German-American Savings Bank,* 118 Cal. 334, 50 P. 656, and *Gnarini* v. *Swiss American Bank,* 162 Cal. 181, 121 P. 726.

The court must ascertain the rights and liabilities of the respective parties as of the time of the levy of the writ of garnishment. Whether the bank was actually indebted to the defendant Shire depends upon what funds the bank had a right to apply toward indebtedness as of that time or prior to the levy of such writ. As pointed out hereinabove, the bank applied the net sum of $13.87 more than it was entitled to apply toward the trust receipt account and the unsecured note account. The entire sum of $805 applied on the chattel mortgage for acces-

sories, was unauthorized either by the terms of the chattel mortgage or by the garnishment statute.

It follows, therefore, that the lower court erred in finding that the garnishee defendant, Bank of Vernal, was indebted in the sum of only $163.58. In view of the documentary evidence, the court should have found that the bank was indebted to defendant Shire as of the date of the levy of the writ of garnishment, in the sum of $818.87. In consequence of our decision there is no need to discuss the issues presented by the cross-appeal.

The judgment of the district court is therefore reversed and the cause remanded with directions to enter judgment in accordance with this opinion. Costs to appellant.

PRATT, C. J., and WADE, WOLFE and LATIMER, JJ., concur.