332 P.2d 472

Jack MELSON, Plaintiff-Appellee,

v.

BANK OF NEW MEXICO, a Corporation, Defendant-Appellant.

No. 6432.

Supreme Court of New Mexico.

Dec. 2, 1958.

Allen M. Tonkin, Hugo C. Cotter, Albuquerque, for appellant.

James Sidwell, Jr., Albuquerque, for appellee.

SHILLINGLAW, Justice.

The question before us is whether a bank can apply the deposits in the account of a debtor to the payment of his matured indebtedness where that indebtedness is secured under terms of a conditional sales contract. For the reasons hereafter stated, we hold that it can not.

On June 12, 1957, the plaintiff Jack Melson, appellee here, purchased a food freezer from Admiral Food Service. He made a small cash payment and signed a conditional sales contract by which he agreed to pay the balance in 24 monthly installments beginning in August. Under terms of the contract, title remained in the vendor until the total balance was fully paid. The contract also contained an acceleration clause by which the vendor could, upon default of a payment due, declare the entire balance to be due and payable, after which the vendor could then take possession of the freezer, resell it, and hold the purchaser liable for any deficiency. The vendor immediately assigned its entire interest under the contract to the defendant Bank of New Mexico, due notice of which was given the plaintiff by the bank.

Plaintiff made his first payment to the bank in August and made a partial payment in September but, because of temporary unemployment, was unable to make any payment in October. On October 28, plaintiff deposited $310 in the checking account which he maintained at the bank and on the next day an officer of the bank telephoned plaintiff that the entire contract balance was then declared to be due under the acceleration clause. The following day, October 30, the bank applied the $310 deposit to the unpaid balance due on the contract, notifying plaintiff by mail of this action and of the balance still owing. The following week the bank repossessed the freezer and proceeded to sell it at public auction in compliance with statute, and it later paid plaintiff the $15.02 surplus which remained from the proceeds of the sale

after deduction of the contract balance and costs.

Plaintiff brought this action to recover the sums taken from his checking account and obtained a judgment in the court below from which the bank brings this appeal.

Admittedly there is no statute in this state which allows a bank to debit an account in payment of a matured debt but the bank argues that no statute is necessary to enable it to exercise the equitable right of set-off. See, 7 Am.Jur., Banks § 629; 9 C.J.S. Banks and Banking § 296.

Jurisdictions which allow a bank the right to set-off general deposits against debts due by the depositor rest their decisions upon the theory that credit the bank extends is given on the faith that funds sufficient to meet the debt at its maturity will come into possession of the bank. Citizens' Bank & Trust Co. v. Yantis, Tex. Civ.App., 287 S.W. 505; Southwest Nat. Bank v. Evans, 94 Okl. 185, 221 P. 53; see also, Michie, Banks and Banking (Perm.Ed.1950) Vol. 5A, § 114.

Under this rationale, the right of set-off might be proper where the bank extended credit on an unsecured promissory note, by certification of a check, by payment of an overdraft, or otherwise. This we do not decide, however, inasmuch as the facts of the instant case do not bring it within the rule argued—here there was no credit extended by the bank in reliance upon the plaintiff's current or future deposits. There were no transactions between the plaintiff and the bank prior to the assignment of the contract to the bank by the vendor. Plaintiff purchased from the vendor under a conditional sales contract, the freezer itself being intended as security for payment of the debt, and the vendor's acceptance of the freezer as security under the terms of the contract is inconsistent with the theory upon which the right of set-off is founded.

There is a lack of uniformity among the decisions in this country upon the question presented. See, for example, Kress v. Central Trust Co., 153 Misc. 397, 275 N.Y.S. 14, affirmed 246 App.Div. 76, 283 N.Y.S. 467, affirmed 272 N.Y. 629, 5 N.E. 2d 365. Assuming the right of set-off to exist in New Mexico, a question which we are not called upon to decide, the Utah court in Seaboard Finance Co. v. Shire, 117 Utah 546, 218 P.2d 282, 286, appears to state the better rule applicable to the facts in this case:

"There was no unsecured liquidated debt at the time the bank debited the checking account to apply [the deposit] on the chattel mortgage note. Except where the mortgagee has contracted with the mortgagor to apply funds subject to withdrawal on the order of the mortgagor to the secured

indebtedness of the mortgagor, there is no right to apply the account nor to hold such account until the security has first been exhausted so that the unpaid balance of the indebtedness is an unsecured debt."

See also, Michie, Banks and Banking (Perm.Ed.1950) Vol. 5A, § 119c; Zollmann, Banks and Banking (Perm.Ed. 1936) Vol. 7, § 4542; Forastiere v. Springfield Inst. for Savings, 303 Mass. 101, 20 N.E.2d 950; 96 A.L.R. 1240.

Finding no error, the judgment of the court below is affirmed and

It is so ordered.

LUJAN, C. J., and COMPTON, J., concur.

SADLER, J., not participating.

McGHEE, Justice (dissenting).

This is another case where I believe bad facts are making bad law. The bank sold the practically new freezer at a very low price, with the result that after applying his deposit of $310 and selling the freezer Nelson was refunded only $15.02. If only the appellant bank had to hereafter suffer the consequences of the opinion of the majority I could easily shut my eyes and go along, satisfied a just decision had been reached in this case. Unfortunately everyone in the state will be hereafter bound by the opinion in this case, and a long established and heretofore banking custom is overturned.

The majority opinion cites cases from Utah and Massachusetts as authority for affirming the judgment. The Utah case follows the California decisions which are based on section 726 of the Code of Civil Procedure of California which reads as follows:

"There can be but one form of action for the recovery of any debt, or the enforcement of any right secured by a mortgage upon real or personal property, which action must be in accordance with the provisions of this chapter."

After the statute had been construed by the Supreme Court of California, Utah enacted the same statute and its Supreme Court felt the California construction should be followed. This leaves only Massachusetts supporting the opinion without a statute on the subject.

Holdings to the contrary in the absence of a controlling statute are: Harper v. First State Bank of Grand Prairie, Tex. Civ.App., 3 S.W.2d 552; Caudle v. Eliasville State Bank, Tex.Civ.App., 93 S.W. 2d 779; American Surety Co. v. De Escalada, 47 Ariz. 457, 56 P.2d 665; Kress v. Central Trust Co. of Rochester, 153 Misc. 397, 275 N.Y.S. 14, affirmed 246 App.Div. 76, 283 N.Y.S 467; Boydston

v. Bank of Camden Point, Mo.App., 141 S.W.2d 86.

The Harper case clearly distinguishes the California cases.

Believing the majority holding to be erroneous and that it will result in more harm than good, I dissent.