594 P.2d 1193

**FIDELITY NATIONAL BANK, a National Banking Corporation, Plaintiff-Appellee,**

v.

**LOBO HIJO CORPORATION, Defendant-Appellant, Cross-Appellee,**

v.

**John RUST, G. R. McNary, Albert Anella and James H. Foley, Cross-Defendants, Cross-Appellants.**

**No. 3335.**

Court of Appeals of New Mexico.

April 3, 1979.

Writ of Certiorari Denied May 1, 1979.

J. E. Casados, Gallagher, Casados & Martin, Albuquerque, for appellant, cross-appellee.

Quincy D. Adams, Adams & Foley, Albuquerque, for cross-defendants, cross-appellants.

Martin E. Threet, Threet, Threet, Glass & King, Albuquerque, for appellee.

## OPINION

WOOD, Chief Judge.

The trial court's judgment determined the amount due the Bank pursuant to a promissory note, determined that the amount due was a prior lien on certain real estate which had been mortgaged to the Bank, foreclosed this lien and ordered the real estate sold, directed how the proceeds of the sale were to be applied, and ruled that the Bank was entitled to judgment for any deficiency that remained after application of the sale proceeds. The numerous

defendants included Lobo (Lobo Hijo Corporation), Freeway (Freeway Old Town Limited), and Limited Partners (Rust, McNary, Anella and Foley). A deficiency judgment was entered against Lobo. A judgment was entered in favor of Lobo and against Limited Partners on the basis of an indemnity agreement. Lobo's appeal, which involves the dismissal of its counterclaim against the Bank (1) raises the issue of the propriety of a setoff. The appeal of Limited Partners raises (2) procedural claims involving the indemnity agreement and issues as to (3) whether the indemnity agreement was joint and several, and (4) whether there was a deficiency to which the indemnity agreement applied.

The trial court approved the special master's sale of the property. After application of the proceeds of the sale, the Bank was granted a deficiency judgment against Lobo for $75,577.25. Lobo was granted a judgment against Limited Partners in the same amount.

*Setoff*

The bank's complaint was filed September 28, 1976. On October 21, 1976 Lobo filed a motion which asserted: (a) it deposited $80,000 into its checking account with the Bank on October 15, 1976 and had written checks on the basis of this deposit; (b) the checks had been returned because the Bank had "placed a hold" on the deposited funds; (c) the Bank had placed the "hold" with the intention of applying the deposited funds against the amount due pursuant to the promissory note; and (d) the Bank's action was contrary to law. Responding to the motion, the Bank admitted it held Lobo's deposit for the purpose of applying a setoff and that it had the right to do so "by reason of the agreement between the parties . . .."

An evidentiary hearing was held on the motion on October 22, 1976. At the conclusion of the hearing, then District Judge Payne stated from the bench:

I am going to rule that the bank may not apply the money as against the indebtedness at this point in time. However, I am going to rule that they may claim a setoff and hold the funds without distribution, pending a determination as to whether the setoff would be proper to apply to the debt, or not.

No written decision was entered in accordance with this oral ruling of Judge Payne.

More than four months after the oral ruling (March 4, 1977), Lobo filed its answer to the Bank's complaint, a counterclaim against the Bank, and a cross claim against Limited Partners. The counterclaim alleged the Bank converted the funds represented by the $80,000 deposit "by failing and refusing to honor any checks written on the checking account." This claim of conversion is the basis for the jurisdiction of the Court of Appeals. Section 34–5–8(A), N.M.S.A. 1978; *Measday v. Sweazea*, 78 N.M. 781, 438 P.2d 525, 26 A.L.R.3d 1386 (Ct.App.1968).

On April 7, 1977 the Bank moved to strike the counterclaim "for the reason that this matter has previously been determined. . . . ." Thereafter, pursuant to stipulation of the parties, the trial court denied the motion to strike, and ruled that the counterclaim would be tried separately, but after the Bank's suit had been tried.

In May, 1977 the Bank moved (1) either to dismiss the counterclaim on the basis that it had been disposed of, or (2) in the alternative for summary judgment on the basis that there were no genuine issues of fact as to the counterclaim. After a June, 1977 hearing, of which there is no record, the trial court reserved judgment on the motion until after the trial of the Bank's claim, but prior to trial of the counterclaim.

After trial of the Bank's claim in September, 1977, the trial court's decree of foreclosure, in October, 1977, granted the Bank's motion to dismiss the counterclaim with prejudice.

Lobo's appellate claim is presented in the alternative either that the trial court erred in dismissing the counterclaim or in granting summary judgment in favor of the Bank.

The issue as to the propriety of dismissing the counterclaim centers on the oral ruling of Judge Payne which was not incorporated in a written decision, the evidentiary hearing in October, 1976 and the June, 1977 hearing of which there is no record. We do not consider these matters further because the counterclaim was properly disposed of by summary judgment.

The Bank's alternative motion of May, 1977 included a request for summary judgment. The trial court's ruling granted the motion without specifying the basis for dismissal. Although we do not know the basis for the trial court's ruling, the order of dismissal was proper if the Bank was entitled to summary judgment on Lobo's counterclaim. *In re Will of Skarda*, 88 N.M. 130, 537 P.2d 1392 (1975).

■ Lobo asserts there was a factual question concerning the Bank's right to setoff Lobo's deposit of $80,000 against Lobo's indebtedness to the Bank. We disagree.

Lobo's promissory note to the Bank states:

> To secure payment of this note . . . we, hereby assign as security for the payment of said indebtedness . . . property of any kind or nature, held by, or under possession or control of said bank . . . and a first and prior lien and right of offset is hereby given for the payment of all indebtedness . . . upon all property or evidence of indebtedness held by said bank.

In addition, a signature card, signed by the president of Lobo, states:

> RIGHT OF SET OFF. All funds to which the depositor is entitled may at all times be held and treated as collateral security for the payment of any and all liabilities of depositor to bank, direct or indirect, absolute or contingent, now or heretofore existing or hereafter arising.

The undisputed facts show the Bank had a right of setoff.

Lobo also asserts that the Bank had no legal right to utilize its deposit as a setoff. Lobo relies on *Melson v. Bank of New Mexico*, 65 N.M. 70, 332 P.2d 472 (1958) which stated the "better rule" to be:

> "There was no unsecured liquidated debt at the time the bank debited the checking account to apply [the deposit] on the chattel mortgage note. Except where the mortgagee has contracted with the mortgagor to apply funds subject to withdrawal on the order of the mortgagor to the secured indebtedness of the mortgagor, there is no right to apply the account nor to hold such account until the security has first been exhausted so that the unpaid balance of the indebtedness is an unsecured debt."

*Melson* does not support Lobo; rather, *Melson* recognizes a right of setoff pursuant to a contract. *Merchant v. Worley*, 79 N.M. 771, 449 P.2d 787 (Ct.App.1969) upheld a setoff where the promissory note expressly authorized the setoff. Here the Bank was given a right of setoff by Lobo's promissory note and by Lobo's signature card.

The trial court properly dismissed Lobo's counterclaim because, under the undisputed facts, the Bank was entitled to setoff the $80,000 deposit against Lobo's indebtedness to the Bank and, thus, the Bank was entitled to summary judgment.

*Procedural Claims Involving the Indemnity Agreement*

Lobo's cross claim against Limited Partners was filed in March 1977. When the Bank's claim was tried in September, 1977, and when the Decree of Foreclosure was entered in October, 1977, no responsive pleading had been filed to the cross claim.

Limited Partners contends "there was no trial whatsoever on the Cross Claim," and that its attorney, Mr. Foley, was unaware that the cross claim was tried at the September, 1977 trial.

At the beginning of the September, 1977 trial, the Bank's attorney stated that there is "some sort of indemnity crossclaim involved," and that Mr. Foley was representing the defendants. Mr. Foley "believed" that was right; Limited Partners was "still in this lawsuit, I don't know . . . ." The trial court inquired if Mr. Foley was representing "those four individuals [Limit-

ed Partners] . . . ." Mr. Foley agreed that he was; "I don't anticipate any conflict between myself as a lawyer and witness . . . ."

During the trial, a witness called by Lobo identified the indemnification agreement. When Lobo's attorney offered the agreement as evidence, Mr. Foley stated: "No objection. This is the—." The trial court then stated: "This is the agreement that you agreed to indemnify. It will be admitted." Thereafter the attorney for Lobo sought to call Mr. Foley as a witness. The trial court inquired of Mr. Foley if he would have any problem testifying in light of his representation "of the four guarantors of the position of Lobo Hijo . . . ." The evidentiary problem was resolved by stipulation between the attorney for the Bank and Lobo; the evidence apparently involved an asserted defense against the Bank's mortgage. Mr. Foley then introduced answers to interrogatories, directed to the capacity in which Lobo had executed the mortgage.

At the close of the evidence, the trial court orally announced that it would grant Lobo judgment "against the four people who signed the indemnity letter for any deficiency resulting at the foreclosure sale." Mr. Foley then said: "I would like to have the judgment recognize that as I understand, the judgment was awarded over against the four individuals," and if Limited Partners had to pay any deficiency, Limited Partners wanted the right to "bid in" over and above the amount of the judgment in favor of the Bank.

The exchanges between the trial court and Mr. Foley, considered alone, are ambiguous because Limited Partners was in the lawsuit both as a defendant to the Bank's claim, and as a defendant to Lobo's indemnity cross claim. The evidence introduced by Mr. Foley, also considered alone, is ambiguous because we cannot determine whether the evidence was introduced as a defense to the Bank's claim or as a defense to the cross claim.

However, the ambiguities do not stand alone. The indemnification agreement did not go to the Bank's claim, it went to the cross claim. Mr. Foley had no objection to introduction of the agreement, he did not claim that introduction of the agreement went beyond the issues being tried. After the trial court's oral judgment, Mr. Foley wanted the written judgment worded in a way he thought might be of benefit to Limited Partners.

The record does not support the contention that the cross claim was not tried or the contention that Mr. Foley was unaware of the cross claim being tried.

The decree of foreclosure was filed October 5, 1977; it provided for judgment in favor of the Bank, against Lobo, and in favor of Lobo, against Limited Partners, to the extent of any deficiency. On October 5, 1977, Limited Partners orally moved for an extension of time in which to file requested findings of fact and conclusions of law. The motion was denied. On October 11, 1977, Limited Partners filed a reply to the cross claim which had been litigated in September, 1977. On November 15, 1977, Limited Partners filed objections to confirmation of the special master's report of the sale of the property, objections to entry of a deficiency judgment, and objections to judgment against Limited Partners. These objections recognized that the cross claim had been tried in September, 1977; the objections recite Limited Partners was "forced to trial on the cross claim" although it had never been served a copy of the cross claim and had filed no reply to the cross claim, at the time of trial, because unaware of the cross claim until the trial was underway.

At the evidentiary hearing on Limited Partners' objections, Mr. Foley testified that he did not become aware of the cross claim until "after the trial . . . ." This testimony is contradicted by the record, reviewed above; this testimony is also contradicted by the trial court, it remembered the cross claim being litigated. Thereafter the special master's report was approved. The approval order also entered the amount of the deficiency judgment in favor of the Bank, against Lobo, and the

amount of the deficiency judgment, in favor of Lobo, and against Limited Partners.

Limited Partners asserts: "Since there was no reply or answer filed to the Cross Claim [at the time of the September, 1977 trial], there could be no trial because there were no issues to be tried." Issues can be tried by implied consent. Rule of Civ.Proc. 15(b). The transcript shows the cross claim was tried by implied consent. *Csanyi v. Csanyi*, 82 N.M. 411, 483 P.2d 292 (1971); *White v. Wayne A. Lowdermilk, Inc.*, 85 N.M. 100, 509 P.2d 575 (Ct.App.1973).

On November 17, 1977, Limited Partners filed requested findings of fact and conclusions of law. These requests went to an asserted absence of a valid deficiency judgment against Lobo, a claim that in the absence of a valid deficiency judgment, there was no liability on the part of Limited Partners, and an assertion that no valid judgment could be entered against Limited Partners on Lobo's cross claim. Limited Partners asserts error by the trial court in failing to act on the requested findings.

■ This contention overlooks the fact that the deficiency judgment against Lobo, and judgment against Limited Partners on Lobo's cross claim, had been entered on October 5, 1977 as part of the decree of foreclosure. Findings in connection with that decree, first requested on November 17, 1977, were untimely and therefore waived. Rules of Civ.Proc. 52(B)(a)(6) and 52(B)(b); *Wagner Land and Investment Co. v. Halderman*, 83 N.M. 628, 495 P.2d 1075 (1972).

■ Limited Partners contends that its requested findings of November 17, 1977 should be considered as requested findings directed to the evidentiary hearing held on November 23, 1977 in connection with its objections to approval of the special master's report. If so, the argument affords Limited Partners no benefit. The issues raised by the objections went to the decree of foreclosure entered on October 5, 1977. Thus, the objections were in the nature of a motion under Rule of Civ.Proc. 60(b) seeking relief from a judgment. Findings are

not required for such a motion. See Rule of Civ.Proc. 52(B)(a)(1); *Mathieson v. Hubler*, 92 N.M. 381, 588 P.2d 1056 (Ct.App.1978).

*Whether the Indemnity Agreement was Joint and Several*

The indemnity agreement was a letter, addressed to Lobo and Freeway, signed by Limited Partners. The letter states in part:

[T]he undersigned will indemnify and hold you harmless from any loss, liability or expense arising out of any deficiency judgment against you which may be obtained by Fidelity National Bank upon foreclosure of its mortgage  . . . .

Limited Partners asserts its agreement was to indemnify Lobo and Freeway, jointly. Because there was no deficiency judgment against Freeway, and because there was no deficiency judgment against Lobo *and* Freeway, Limited Partners asserts that judgment against it, on the basis of the Bank's deficiency judgment solely against Lobo, was improper. We disagree.

■ The letter agreement, in itself, does not show the agreement was a joint indemnity agreement. The "you" in the indemnity letter refers to the addressees. The addressees are:

Lobo-Hijo Corporation
Freeway-Old Town, Ltd.
c/o Gallagher, Casados & Patten
Bank of New Mexico Building
Albuquerque, NM   87102
Gentlemen:   . . .

The "you" in the letter can be fairly read as referring to the addresses individually. Thus, we do not hold that the letter was an agreement to indemnify Lobo and Freeway, jointly. However, no evidence was presented, or tendered, as to the intent of Lobo, Freeway, and Limited Partners as to whether the agreement was to indemnify Lobo and Freeway, jointly. Accordingly, we answer the contention of Limited Partners by assuming the agreement was joint—to indemnify Lobo *and* Freeway.

Section 38–4–2, N.M.S.A. 1978 provides: "Where two or more persons are bound by contract  . . .  whether jointly only, or

jointly or severally, or severally only . . the action thereon may . . . be brought against any or all of them . . ."

Section 38–4–3, N.M.S.A. 1978 provides: "All contracts, which by the common law are joint only, shall be held and construed to be joint and several . . . ."

 Under these statutes, the indemnity agreement, if joint, was to be construed to be joint and several. Lobo, severally, was entitled to be indemnified on the basis of the deficiency judgment against it.

*Whether There Was a Deficiency to Which the Indemnity Applied*

 The proceeds of the sale of the mortgaged property were $75,577.25 short of satisfying the judgment. The trial court granted a deficiency judgment against Lobo in that amount, and the judgment in favor of Lobo, against Limited Partners, was also in that amount. The judgment recognized the Bank's right of setoff; the judgment provided that the deficiency judgment against Lobo was to be satisfied from the $80,000 deposit held by the Bank.

Limited Partners asserts that by applying the setoff, "the indebtedness was reduced to the amount paid at the Foreclosure Sale and there was no deficiency. If there was no deficiency, there could be no judgment over against Limited Partners."

This contention is frivolous; it disregards both the wording of the judgments and agreement of the parties. Limited Partners agreed to indemnify Lobo for any "loss, liability or expense arising out of any deficiency judgment" obtained by the Bank upon foreclosure of the mortgage. A deficiency judgment was entered, in favor of the Bank, against Lobo. The fact that the Bank collected that deficiency judgment by setting off the judgment against the deposit, does not make the deficiency judgment any less of an expense to Lobo. Seventy-five Thousand, Five Hundred Seventy-seven and $^{25}/_{100}$ of Lobo's money was used to satisfy the deficiency judgment; Lobo was entitled to indemnification from Limited Partners for that amount.

The decree of foreclosure and the trial court's order approving the special master's sale are affirmed.

IT IS SO ORDERED.

HENDLEY and ANDREWS, JJ., concur.