In re A.E. "Tony" AGUILAR and Lois
Roxann Aguilar.

A.E. "Tony" AGUILAR

v.

VALLEY FEDERAL SAVINGS BANK
and Fred Sanders.

Bankruptcy No. 11–88–00446 R A.
Adv. No. 88–0106.

United States Bankruptcy Court,
D. New Mexico.

Jan. 10, 1989.

Kathryn Levy, Albuquerque, N.M., for A.E. "Tony" Aguilar.

Jennie Behles, Albuquerque, N.M., for Valley Federal.

W.T. Martin, Carlsbad, N.M., for Sanders.

MEMORANDUM OPINION

STEWART ROSE, Chief Judge.

BACKGROUND

This lawsuit was originally filed in State Court on July 7, 1987. The plaintiffs, Tony and Roxann Aguilar, filed their Chapter 11 petition on February 25, 1988. The suit was removed to the Bankruptcy Court on April 28, 1988 by defendant Valley Federal Savings Bank. Defendant Fred Sanders, a former officer of Valley, has filed his own Chapter 7 petition.

Before the Court today is a motion for summary judgment filed by Valley. The controversy arises from the sale and financing of a restaurant and liquor license in Artesia, New Mexico in the spring and summer of 1986. The Aguilars allege misrepresentation, conversion, defamation, interference with business relations, infliction of emotion distress, breach of fiduciary duty and illegal repossession. Valley denies the allegations and raises as an affirmative defense that the claims were compulsory counterclaims in prior state court litigation. The parties chose not to file briefs supporting their relative positions, but instead asked the Court to rely on extensive oral argument, deposition testimony, affidavits and documents. Having considered the arguments and evidence submitted, the Court holds that Valley is entitled to summary judgment on Counts I and III. Valley is entitled to partial summary judgment on Counts II, IV, V and VI.

FACTS

The facts as ultimately found by the Court follow. Additional findings are stated in the discussion of each part of the complaint.

Tony Aguilar is a former banker and until recently operated several businesses in Roswell and Artesia, New Mexico. He is married to Roxann Aguilar. W.A.M. Investments, Ltd. is a New Mexico limited partnership. Tony is the general partner. Bav–Ma, Inc. is a New Mexico Corporation owned or controlled by Tony. In April and May of 1986, W.A.M. contracted to purchase a building, furniture, fixtures and a liquor license in order to operate a restaurant. Valley owned all of the purchased assets except the building. Valley also financed part of the purchase. Complications arose over transfer of the liquor license and the new restaurant never operated at a profit. Tony, his entities and his

businesses suffered continuing financial setbacks.

Sometime in late 1986 and early 1987, two State Court lawsuits were filed. In CV86–435, W.A.M. and Aguilar sued Valley and others. The complaint alleged breach of contract to deliver the liquor license, sought rescission of the guaranties and promissory note, alleged negligence and breach of warranty of title and sought rescission of the contracts for sale of the fixtures and building. In CV87–27F, Albuquerque Federal Savings and Loan, first mortgagee, sought foreclosure against Tony, W.A.M. and Valley. Tony filed a crossclaim against Valley seeking to have all of the transactions declared as one and rescinded because of the failure of Valley to transfer the liquor license. Valley filed a crossclaim seeking judgment on its note from W.A.M.

A complete set of pleadings from the State Court was not put into evidence, but it appears from those that were provided that the cases were consolidated and cross motions for summary judgment were filed.

The State Court ruled that among the parties, the liquor license is vested in W.A.M., subject to Valley's lien; claimant Taylor has no interest in the license; the State Court litigation is no impediment to the transfer of the license by the State; W.A.M. must cooperate in the transfer of the license and has no claim against Valley until it fails in a good faith attempt to effect a transfer; Valley has breached no duty to W.A.M.; W.A.M. has abandoned all other claims in its complaint and the W.A.M. complaint is dismissed. The bankruptcy and current lawsuit followed.

## DISCUSSION

### A. Count I—Misrepresentation

■ Count I, in part, alleges negligent or intentional misrepresentation on the part of Valley by its failure to make an additional $90,000 loan to Tony, or his partners in W.A.M. The money was to be in addition to the $155,000 borrowed by W.A.M. for the furniture, fixtures and liquor license. The new loan would cover operating expenses of the new restaurant. No inquiry into the existence of a fact dispute need be made. Even if all facts are as the plaintiffs claim, the defendant is nevertheless entitled to judgment. Any cause of action involving a representation to make a loan was a compulsory counterclaim in the prior litigation. Such a claim is barred by Fed.R. Civ.P. 13, and should have been brought in CV87–27F against Valley's crossclaim. Paragraph 5 of Count I, made applicable to all six counts, states that the bank, "in connection with the sale of a liquor license" said it would loan additional money. Since this complaint is "in connection with the sale of a liquor license", it arises from the same transaction or occurrence as the two State Court lawsuits.

On pages 242 through 260 of Tony's deposition, the bank's counsel asks Tony to state the facts supporting Count I. Tony alleges the promise to loan an additional $90,000 and discusses the terms and what assets he might pledge as security. On page 255, Tony ties the transactions together. He states that the bank officer said to close the $155,000 loan first, and then the bank would loan the $90,000 after the liquor license was transferred. The loan for the furniture, fixtures and license and the promised future loan are all part of the same transaction. Fed.R.Civ.P. 13(a) mandates that this type of claim be litigated with all other claims. The identical New Mexico rule, SCRA 1986, Civ.P.R. 1–013(A) is discussed in a similar context in *Slide–A–Ride v. Citizens Bank of Las Cruces*, 105 N.M. 433, 733 P.2d 1316 (1987). In New Mexico courts, "a transaction or occurrence is the same if a 'logical relationship' exists between the opposing parties claims. A logical relationship will be found if both the claim and counterclaim have a common origin and a common subject matter." 105 N.M. at 436, 733 P.2d at 1318. The reasoning of the New Mexico Supreme Court is persuasive and will be applied. The Aguilars' claims for a representation to loan money were compulsory counterclaims in the State Court. They cannot be raised here.

That much of Count I alleging a misrepresentation to loan money is dismissed and

summary judgment is granted for the defendant bank.

The remainder of Count I alleges misrepresentation, to others, by the bank, of the Aguilars' financial condition. In essence, a defamation is alleged, and the count is dismissed and summary judgment shall enter for the bank. The Court's reasoning is discussed in connection with the ruling on Count III.

### B. Count II—Conversion

■ Based on the uncontroverted affidavit of William Harrison, an officer of Valley, and the supporting bank documents, the Court makes the following additional findings:

Savings account No. 10234003 was held jointly by Tony and Roxann. On July 30, 1986, $50,000 was deposited into the account. On July 31, $4,800 was withdrawn by a check made payable to Roxann. Also on July 31, $23,000 was transferred, by the bank, to the account of Bav–Ma, Inc. Between July 31, and August 14, three transfers, totaling $26,569.52, were made by the bank to the account of W.A.M. On August 28, $524.57 was withdrawn by Tony.

On July 31, Bav–Ma was indebted to Valley on a promissory note. The note was in default. Bav–Ma's account was in overdraft. The funds transferred into the Bav–Ma account covered the overdrafts. W.A.M. was also in debt to Valley on a defaulted note. The funds transferred into the W.A.M. account were also used to cover overdrafts.

In July of 1985, Tony signed a guaranty, promising to pay all of Bav–Ma's debts to Valley. The guaranty gave Valley a contractual right of offset against any of Tony's accounts. A similar guaranty was signed by Tony and Roxann for all of W.A.M.'s debt to valley, but no right of offset was granted. The signature card and deposit agreement contain no express right of offset.

Count II alleges the conversion of $54,000 from the Aguilars' account by the bank. The motion for summary judgment contends that Valley had either permission or a legal right of offset.

As for the $23,000 applied to Bav–Ma's overdrafts, the Court concludes that Valley had a contractual right of offset. The undisputed facts are that Tony's guaranty promised to pay all of Bav–Ma's debts to Valley. Bav–Ma was indebted to Valley on July 31 by way of overdrafts. A bank has the right to charge its customer's account with items properly payable even though an overdraft is created. Such an overdraft creates an implied promise to pay on the part of the customer. N.M.Stat.Ann. § 55–4–401(1) (1978) and official comments. The Bank properly exercised its contractual right of offset as far as the $23,000 transferred to Bav–Ma is concerned. *Fidelity National Bank v. Lobo Hijo Corp.,* 92 N.M. 737, 594 P.2d 1193 (N.M.App.1979). That part of Count II alleging conversion of $23,000 is dismissed and summary judgment shall enter for the bank.

It is further undisputed that Tony and Roxann withdrew $524.57 and $4,800, respectively. The bank did not convert this money. So much of Count II alleging conversion of $5,324.57 is dismissed and judgment shall enter for the bank.

Of the $54,000 alleged to have been converted, $25,675.43 remains. However, the bank asserts it transferred $26,569.52 to the W.A.M. account. The numbers supplied by the parties are off by $893.89. The Court cannot account for the difference and makes no ruling on the discrepancy.

Nevertheless, the bank transferred $26,569.52 to the W.A.M. account. The documents offered by the bank fail, on their face, to grant to the bank a contractual right of offset.

■ The bank asserts a common law right of offset. That may be true in all other jurisdictions, but the New Mexico Supreme Court has specifically declined to rule on the existence of such a right. *Melson v. Bank of New Mexico,* 65 N.M. 70, 332 P.2d 472 (1958). This Bankruptcy Court, deciding issues of state law, will not speak for the State Supreme Court and create a new common law right. As well, no statutory right of offset was cited to the

Court. This being so, summary judgment must be denied as to the $26,569.52 transferred to the W.A.M. account, without prejudice to the submission of additional documents or legal authority to show a right of offset. A fact dispute remains on the issue of authorization of the transfers by the plaintiffs.

### C. Count III—Defamation

■ Count III of the complaint, in paragraph 4, states that "Defendant Sanders and/or with the ratification of Defendant Bank," defamed Aguilar. It is hornbook law that the bank, a corporation, can only act through its officers, agents or employees. The bank cannot have defamed Tony on its own. It could only defame Tony by authorizing Sanders to do so, by ratifying Sanders' actions or by a theory of vicarious liability whereby Sanders acted within the course or scope of his employment.

The complaint only alleges ratification by the bank. The uncontroverted affidavit of bank officer Harrison states that Valley neither authorized or ratified the actions of Sanders. There being no fact dispute on the issue of ratification or authorization of Sanders' actions, summary judgment is granted in favor of Valley on Count III of the complaint.

### D. Count IV—Interference with Business Relations and Infliction of Emotional Distress

Count IV makes no additional factual allegations but merely relies on other counts of the complaint. The Court has already dismissed, as to the bank, those parts of the complaint that allege a misrepresentation, a defamation and a conversion of money except to the extent of $26,-569.52. Count IV thus alleges damages with no factual basis. This count states no claim. It is dismissed without prejudice to the allegation of other facts which might support such a claim for damages.

■ The Court must note, however, that even if the bank converted the $26,569.52, Tony and Roxann, it seems, suffered no damage to their business relations and suffered no emotional distress. The undisputed documentary evidence presented by the bank shows that the money was used to cover W.A.M. overdrafts. By paying the items in the first place, the bank furthered and promoted Tony's business interests. The bank prevented the emotional distress that would have accompanied $26,000 worth of unpaid and returned checks.

### E. Count V—Breach of Fiduciary Duty

Count V alleges a breach of fiduciary duty by the bank. The motion for summary judgment requests that Count V be dismissed insofar as it alleges a defamation by the bank. The Court has ruled that the bank did not defame Tony. Summary judgment is granted for the bank insofar as the count alleges a defamation.

### F. Count VI—Illegal Repossession and Trespass

■ Count VI alleges illegal repossession of a truck and trespass to Tony's home. The undisputed documentary evidence, uncontroverted affidavits of Harrison and Budwine and deposition testimony reveal that the bank had a valid and perfected security interest in the truck and that the loan was in default. The truck was not illegally repossessed.

■ The undisputed affidavits and deposition testimony of Bartlett and Hightower show that Tony and Roxann did not own the home, that the home was unoccupied and that the mortgage to Valley was in default. The bank, under these circumstances, rightfully locked up the house. Tony does, however, claim an oral lease or other agreement giving him a right to possession. No terms are shown, and the circumstances are quite vague.

In this situation, summary judgment is granted in favor of the bank on Count VI, without prejudice to the plaintiff to allege other facts showing the Aguilar's exclusive right to possession of the home, by an agreement with the owner and further

showing the bank had no right to protect its mortgagee interest.

### CONCLUSION

Summary judgment is granted in favor of the bank on Counts I and III and they are dismissed in their entirety. Judgment is granted to the bank on Count II except to the extent of $26,569.52 transferred to the W.A.M. account, without prejudice to a showing of a right of offset. Count IV alleges no facts to support the claim for damages and is dismissed without prejudice to the allegation of other facts. Count V is dismissed so far as it alleges a defamation. As to the truck in Count VI, judgment is granted in favor of the bank. As for the house, judgment is granted to the bank, without prejudice to the allegation of facts supporting the plaintiffs' right to possession of the home and showing no right, on the part of the bank, to protect its interests.

This opinion constitutes the Court's findings of fact and conclusions of law. Counsel for defendant bank shall prepare and submit an appropriate form of judgment.