T.C. Memo. 1995-486

UNITED STATES TAX COURT

MARK R. AND DIANE R. WEBB, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16380-93.                    Filed October 10, 1995.

<u>Michelle Turpin</u>, for petitioners.

<u>James B. Ausenbaugh</u>, for respondent.

MEMORANDUM OPINION

COUVILLION, <u>Special Trial Judge</u>:  This case was heard
pursuant to section 7443A(b)(3)[1] and Rules 180, 181, and 182.

Respondent determined a deficiency in Federal income tax of
$2,044 and an addition to tax under section 6651(a)(1) in the

_____

[1]     Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the year at issue. All Rule
references are to the Tax Court Rules of Practice and Procedure.

amount of $2,885 with respect to petitioners' 1989 tax year.

Petitioners conceded all the adjustments in the notice of deficiency.[2] The issues for decision are: (1) Whether petitioners, during 1989, realized a gain or loss under section 1001(a) on the foreclosure sale of real estate; (2) if petitioners realized a loss, whether petitioners are entitled to a credit or refund for overpayment of their 1989 income tax under section 6512; and (3) whether petitioners are liable for the addition to tax under section 6651(a)(1).

At trial, the parties submitted this case fully stipulated. All of the stipulated facts are so found, and those facts, with the annexed exhibits, are incorporated herein by reference. At the time the petition was filed, petitioners' legal residence was Alpine, Utah.

Petitioners filed their 1989 Federal income tax return on October 30, 1990. On April 12, 1991, petitioners filed an amended return for 1989, claiming an ordinary loss of $75,379 resulting from the foreclosure sale of real estate, consisting of a lot and improvements, owned by Mark R. Webb (petitioner). On

---

[2] These adjustments consist of the following: (1) A reduction in depreciation of $762; (2) a reduction in car and truck expenses of $319; (3) a reduction of Schedule C interest expense of $3,699; (4) a reduction of telephone expenses of $513; and (5) a reduction in Schedule A interest of $41. Petitioners also conceded that they were not entitled to a personal exemption deduction for petitioners' son, Gregg. There is a dispute as to whether petitioners conceded the addition to tax under sec. 6651(a)(1). That issue is dealt with in the body of the opinion.

the amended return, petitioners claimed a refund of $5,420.

The notice of deficiency did not take into account the amended return filed by petitioners, nor does it appear that the Internal Revenue Service accepted the amended return and refunded the claimed amount to petitioners. However, in their petition, petitioners, while conceding the adjustments in the notice of deficiency (see supra note 2), alleged they realized an ordinary loss based upon the foreclosure sale, as reported on their 1989 amended return, and prayed that the Court determine that petitioners "are due a refund in an amount to be determined by the Court." In an amendment to answer, respondent denied that petitioners realized a loss on the foreclosure sale, but instead affirmatively alleged that petitioners realized an ordinary gain from the foreclosure sale. Accordingly, respondent alleged an increase in the deficiency in income tax from $2,044 to $4,200 and an increase in the addition to tax under section 6651(a)(1) from $2,885 to $3,423.90. No reply was filed by petitioners to respondent's affirmative allegations, nor did respondent move under Rule 37(c) to have the affirmative allegations deemed admitted. Accordingly, the affirmative allegations are deemed denied. Rule 37(c).

On April 21, 1984, petitioner and Michael K. Kelly (Kelly) organized Silvercrest of America Corp. (Silvercrest), an S corporation, with each owning 50 percent of the stock. On July 9, 1984, Silvercrest acquired, by warranty deed, a lot in

the Sundance Recreation Resort, located at Provo Canyon, Utah. On that same day, the lot was conveyed by Silvercrest to Kelly by warranty deed. Finally, on December 28, 1984, Kelly conveyed the lot, by warranty deed, to petitioner, Dan A. Waddell (Waddell), and Michael E. Truman (Truman) as tenants in common.

On May 1, 1986, petitioner, Waddell, and Truman (sometimes referred to as the debtors) borrowed $530,000 from Richards-Woodbury Mortgage Corp. (Richards), a Utah corporation, for construction financing to build a luxury home (home) on the lot. The debtors were each personally liable, jointly and severally, for the full loan amount, and the loan note (note) was secured by a mortgage on the lot. Richards negotiated the note to the Citizens Banking Co. (Citizens) without recourse.

After its construction, the home was to be sold to Timbercrest, a limited partnership organized by Silvercrest, petitioner, and Kelly to purchase, maintain, and lease the home. Silvercrest, petitioner, and Kelly were the general partners of Timbercrest. Thereafter, 20 limited partners (investors) were admitted into the partnership. Each limited partner made a capital contribution of $35,000 per unit, payable partly in cash and in large part by execution of promissory notes to the partnership. The general partners owned 1 percent of the partnership's capital and 99 percent was owned by the limited partners. Profits and losses were allocated in the same ratios.

As a result of the passive loss limitations enacted in the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, the investors were unable to deduct most of the losses allocated to them by Timbercrest after 1986. During 1987, all 20 investors stopped making payments on the promissory notes they had executed in favor of Timbercrest as their capital contributions to the partnership. The general partners made no additional capital contributions to the partnership; consequently, the partnership defaulted in payments to its creditors. The general partners foreclosed the limited partnership interests, and the partnership was terminated as of December 31, 1987.

With the demise of the partnership, the debtors (which included petitioner), who were the makers of the $530,000 mortgage note, likewise defaulted on the note. Consequently, Citizens, as holder of the note, instituted foreclosure proceedings against the debtors under Utah Code Ann. sec. 78-37-1 (1992).[3]

---

[3] Utah Code Ann. sec. 78-37-1 (1992) provides:

> There can be one action for the recovery of any debt or the enforcement of any right secured solely by mortgage upon real estate which action must be in accordance with the provisions of this chapter. Judgment shall be given adjudging the amount due, with costs and disbursements, and the sale of mortgaged property, or some part thereof, to satisfy said amount and accruing costs, and directing the sheriff to proceed and sell the same according to the provisions of law relating to sales on execution, and a special execution or order of sale shall be issued for that purpose.

In September 1988, a Utah State court rendered judgment in favor of Citizens and against the debtors in the amount of $634,426.53, which included principal, interest, attorney's fees, taxes, and court costs. The judgment recognized the mortgage, lien, and privilege on the subject real estate and ordered the sale of the property and application of the proceeds toward satisfaction of the judgment. Pursuant to the judgment, the local county sheriff seized, advertised, and sold the property at public auction on November 23, 1988. The property was sold and adjudicated to Citizens for $450,155.05. After retaining $155.05 for his expenses, the sheriff remitted $450,000 as the net proceeds from the sale as to which he prepared a written return that stated that, after application of the $450,000 on the judgment, there remained "a deficiency balance in the amount of $184,426.53" ($634,426.53, the total amount due under the judgment, less $450,000, the net proceeds from the sale).

Utah Code Ann. sec. 78-37-2 (1992) provides:

> If it appears from the return of the officer making the sale that the proceeds are insufficient and a balance still remains due, judgment therefor must then be docketed by the clerk and execution may be issued for such balance as in other cases; but no general execution shall issue until after the sale of the mortgaged property and the application of the amount realized as aforesaid.

The parties agree that the clerk of the Utah court failed to

"docket" the judgment pursuant to this statutory provision.[4]
However, Citizens never released petitioner from his obligation
on the judgment; the judgment was never canceled from the public
records, and the parties stipulated that "Citizens Bank expected
Webb [petitioner] to pay the deficiency balance".

At some point in 1988, Waddell, one of the debtors, filed
for bankruptcy and was discharged from his obligation on the
note.  Also, sometime in 1989, Truman, another debtor, filed for
bankruptcy and was discharged from his obligation on the note.
There is no evidence that either of these debtors made any
payments on the note and/or the judgment.

The parties have stipulated that, at the time of the
foreclosure sale, the adjusted basis of the foreclosed property
was $520,379, and the property had a fair market value of
approximately $625,000.

In December 1988, following the sale and adjudication of the
property to Citizens, petitioner entered into an agreement with
Citizens whereby petitioner agreed to be the listing agent for
the sale of the property.  Under the agreement, petitioner would

---

[4]    Under Utah law, petitioner had the right to redeem the
property sold at the foreclosure, and the sheriff's sale was not
final until 6 months after the sale.  Utah R. Civ. P. 69 (1994).
Petitioner did not redeem the property, and the sale became final
on May 23, 1989.  Accordingly, petitioner did not deduct his loss
on the foreclosure sale of the property until tax year 1989, the
year the sale became final.  See R. O'Dell & Sons Co. v.
Commissioner, 169 F.2d 247, 249 (3d Cir. 1948), affg. 8 T.C. 1165
(1949).  Respondent does not challenge that the sale was final in
1989, and that 1989 is the proper year for recognizing any gain
or loss from the sale for tax purposes.

earn a commission of $5,000 for each 20 percent interest he sold in the property. By June 1989, the entire property was sold for $525,000 through petitioner's efforts. Petitioner earned a commission of $25,000 for the sale of the property, which was credited by Citizens on the deficiency balance owing under the judgment. Citizens later credited the judgment by an additional $50,000. The consideration for this credit is not explained in the stipulation.

On October 29, 1990, petitioners filed a bankruptcy petition under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court, District of Utah, Central Division. In the bankruptcy petition, petitioners listed the deficiency judgment balance owing to Citizens as an unsecured claim without priority in the amount of $100,000. On February 11, 1991, petitioners received a discharge in bankruptcy, and the indebtedness owing to Citizens was completely discharged.

As stated above, on their amended 1989 Federal income tax return, petitioners claimed an ordinary loss of $75,379 on the foreclosure sale of the lot. Respondent contends that petitioners realized an ordinary gain of $7,665.97 on the foreclosure sale.

Section 1001(a) provides, in general, that the gain from the sale or other disposition of property is the excess of the amount realized over the adjusted basis of such property, and that the loss shall be the excess of adjusted basis over the amount

realized.  The sale of mortgaged property at a foreclosure sale is treated as a sale or exchange from which the mortgagor may realize gain or loss under section 1001.  <u>Helvering v. Hammell</u>, 311 U.S. 504 (1941).

The parties agree that the foreclosure sale of the lot constituted a sale for tax purposes.  <u>Id</u>.  Furthermore, the parties stipulated that petitioner's basis in the foreclosed property was $520,379.  In dispute is the "amount realized" on the foreclosure sale that is to be applied against petitioner's basis to determine the amount of gain or loss from the sale.

Petitioners contend that, pursuant to <u>Aizawa v. Commissioner</u>, 99 T.C. 197 (1992), affd. 74 AFTR2d par. 94-5493, the amount realized is the amount of the foreclosure sale proceeds, or $450,000, resulting in a loss to petitioners of $70,379, which is the excess of petitioner's basis of $520,379 over the amount realized of $450,000.  Respondent, on the other hand, contends that petitioners realized a gain on the foreclosure sale under the <u>Aizawa</u> case.  More specifically, respondent contends that the amount realized must be the lesser of the fair market value of the property or the amount of the debt.  Respondent bases this argument on the ground that, after the foreclosure sale, petitioner was discharged from any further liability on the deficiency or unpaid portion of the judgment; therefore, under section 1.1001-2(a)(1), Income Tax Regs., the deficiency or unpaid portion of the judgment constituted income

from the discharge of indebtedness and, therefore, did not constitute an "amount realized" for purposes of gain or loss.[5]

In the Aizawa case, property subject to a recourse mortgage was sold at a foreclosure sale and a deficiency judgment was obtained. The issue in the Aizawa case was the same as in this case, i.e., the amount realized on the foreclosure sale. In the Aizawa case, respondent argued that the amount realized was the amount of the unpaid mortgage principal before the foreclosure without regard to the deficiency. The Court rejected respondent's argument because:

> It requires petitioners to treat as money received an amount of their unpaid mortgage principal obligation from which they have not yet been discharged, leaving to the future the tax consequences of any subsequent payments or settlement of the deficiency judgment for less than the unpaid amount. * * * [Aizawa v. Commissioner, supra at 199; emphasis added.]

---

[5] Respondent argues that the gain realized by petitioners was $7,665.97. Respondent calculated that amount by comparing the fair market value of the property, $625,000, with the amount of the debt, $528,044.97. Since the amount of the debt is the lesser amount, respondent argues that the amount realized was $528,044.97. The agreed basis of the property was $520,379; therefore, the gain realized was $7,665.97. The Court questions respondent's use of $528,044.97 as being the correct amount of the debt. That figure was the unpaid principal on the note. At the time of the foreclosure proceeding, in addition to the unpaid principal, the Utah court decreed an additional amount due and owing of $106,381.56 for accrued interest, attorney's fees, taxes, and court costs. The amount of the debt, therefore, was $634,426.53 as set out in the judgment, rather than the $528,044.97 argued by respondent.

The Court reasoned:

> The key to the resolution of the issue before us lies in the recognition that, in this case, there is a clear separation between the foreclosure sale and the unpaid recourse liability for mortgage principal which survives as part of a deficiency judgment. * * *  [Id. at 200.]

The Court held in the Aizawa case that, where there is a foreclosure sale and an unpaid recourse liability survives as a deficiency judgment and continues as an enforceable liability against the debtor, the amount realized is the foreclosure proceeds and not the amount of the recourse liability.  The Court also noted that there was no dispute that the foreclosure proceeds in that case represented the fair market value of the property.

Respondent argues that there are two main differences between this case and the Aizawa case that require a different result here.  Respondent first points out that, unlike the Aizawa case, the fair market value of the property in this case exceeded the foreclosure price.  Secondly, respondent argues that, unlike the Aizawa case, no portion of petitioner's unpaid recourse liability for the mortgage survived under Utah law as part of a deficiency judgment at the close of 1989.[6]

---

[6]    Based on the discussion that follows, it is not necessary for the Court to address whether it is relevant that the fair market value of the property exceeded the amount realized in the foreclosure sale.

Respondent argues that Citizens did not obtain a deficiency judgment against petitioner under Utah's one-action foreclosure law, Utah Code Ann. sec. 78-37-1, and that, as a result of the rendition of the judgment, the note on which the judgment was obtained became extinguished as a matter of law.  Respondent further argues that there was no enforceable deficiency judgment because a technical requirement of Utah State law was not followed after the foreclosure sale; therefore, the unpaid deficiency under the judgment was discharged and did not survive as an enforceable obligation against petitioner.  Relying on Commissioner v. Tufts, 461 U.S. 300 (1983), and Chilingirian v. Commissioner, 918 F.2d 1251 (6th Cir. 1990), affg. T.C. Memo. 1986-463, respondent contended that, if there is no deficiency judgment against petitioner, the amount realized was the amount of the unpaid mortgage, $528,044.97, ostensibly under the theory that petitioner was relieved of his obligation to pay an indebtedness for that amount.[7]

Citizens' foreclosure proceedings were instituted against petitioner pursuant to Utah's one-action statute, Utah Code Ann. sec. 78-37-1 (1992).  Under this statute, "there can be but one action for the recovery of any debt secured by a mortgage."  Bank of Ephraim v. Davis, 581 P.2d 1001, 1003 (Utah 1978) (citing Salt

---

[7]    Again, see supra note 5, this argument fails to take into consideration the accrued interest and other costs that were due under the judgment.

Lake Valley Loan & Trust Co. v. Millspaugh, 18 Utah 283, 54 P. 893 (1898)). A judgment was rendered in favor of Citizens against petitioner under this statute, on September 19, 1988, in the amount of the unpaid principal balance on the note plus interest and costs. Under the same judgment, a deficiency judgment was adjudged against petitioner for the full amount of any sum owing to Citizens under the note after the proper application of the proceeds of the sale of the property. After the sale, a return of the officer was made showing that there was a deficiency balance. The formality of "docketing" the judgment by the clerk of the Utah State court was not followed as required by Utah Code Ann. sec. 78-37-2 (1992). This failure to "docket" is the technicality respondent relies on.

Respondent's argument that there was no surviving deficiency judgment against petitioner is based on Utah Code Ann. sec. 78-37-2. In pertinent part, that statute provides that, "If it appears from the return of the officer making the sale that the proceeds are insufficient and a balance still remains due, judgment therefore must then be docketed by the Clerk". Respondent argues that there was no deficiency judgment in this case because of the failure of the clerk to "docket" the judgment, and that an undocketed judgment is a nullity. Respondent cited no authority that, under Utah State law, an undocketed judgment is a nullity. Respondent cited In re Bundy's Estate, 241 P.2d 462, 467 (Utah 1952), wherein the Utah Supreme

Court held that, under the pertinent Utah Rules of Civil Procedure, "a judgment is complete and is deemed entered for all purposes when the same is signed and filed". Further, respondent cited First Natl. Bank v. Haymond, 57 P.2d 1401, 1405 (Utah 1936), wherein the Utah Supreme Court stated that "The clerk, must, as a mere ministerial duty, enter a deficiency judgment against the proper parties when the return of the sale shows that the mortgaged property is not sold for an amount sufficient to pay the amount due and owing". (Emphasis added.) The facts that the failure to docket the judgment was not an act that was required of Citizens, but was required of the clerk of court; that such an act of omission by the clerk was a ministerial omission; that there was a return by the sheriff, a public record, which clearly reflected a deficiency balance on the judgment following the foreclosure sale; that both Citizens and petitioner recognized there was an enforceable unpaid balance due after the foreclosure sale; that subsequent payments were credited to the unpaid deficiency; and that the remaining unpaid balance was listed and thereafter discharged by a bankruptcy court all lead this Court to conclude and hold that, following the foreclosure sale, Citizens held a legally enforceable deficiency judgment against petitioner, and that this liability existed despite the failure of a public official to perform a purely ministerial duty. The unpaid deficiency, therefore, survived the foreclosure sale.

Having concluded that there was a valid and enforceable deficiency judgment against petitioner following the foreclosure sale, and that, therefore, petitioner's liability was not extinguished as a result of the failure of the clerk of court to docket the judgment, this case cannot be distinguished from the Aizawa case. Accordingly, based on the Aizawa case, the amount realized by petitioners on the foreclosure sale was the sum of $450,000, the amount for which the property was sold at public auction. The excess of petitioner's basis of $520,379 over the amount realized of $450,000 yields a loss of $70,379 to petitioners. Petitioners, therefore, are sustained on this issue.[8]

The second issue, in view of the Court's holding that petitioners realized a loss on the foreclosure, is whether petitioners are entitled to a credit or refund for an overpayment of their 1989 taxes. This Court has jurisdiction under section 6512(a) and (b) to determine an overpayment of taxes and the amount of such overpayment to be credited or refunded for any year before the Court.

On their 1989 Federal income tax return, petitioners' Federal income tax, after taxes withheld, was $11,580. On April 12, 1991, petitioners filed an amended income tax return

---

[8] On their 1989 amended Federal income tax return, petitioners claimed a loss of $75,379. On brief, however, petitioners argued that they realized a loss on the foreclosure sale in the amount of $70,379. The Court agrees that $70,379 is the correct amount of the loss.

for 1989, reporting the loss that was the principal issue in this case, and claimed a refund of $5,420. Although petitioners have conceded several adjustments that would increase their taxable income, the total of these adjustments is far less than the $70,379 loss realized by them in the foreclosure sale of their property. The amended return was filed within the limitation provision of section 6512(b)(3)(C), prior to issuance of the notice of deficiency. Petitioners, therefore, overpaid their taxes for 1989 and, therefore, are entitled to a credit or refund resulting from this overpayment. The amount of the credit or refund will be calculated under Rule 155.

The third issue is whether petitioners are liable for the addition to tax under section 6651(a)(1) for their failure to file timely their 1989 Federal income tax return. Petitioners' 1989 return was date stamped as having been received by the Internal Revenue Service (IRS) Center at Ogden, Utah, on October 30, 1990. Attached to the return is IRS Form 2688, Application for Additional Extension of Time to File, wherein petitioners requested an extension of time until October 15, 1990, to file their return. This extension was approved. As stated above, however, petitioners did not file their return until October 30, 1990. Therefore, their return was delinquent.

The addition to tax under section 6651(a)(1) is imposed where there is failure to timely file a tax return, unless it is shown that the failure to timely file is due to reasonable cause

and not due to willful neglect.  Petitioners presented no evidence to establish reasonable cause for the delinquent filing of their return.  Respondent, therefore, is sustained on this issue.  However, the addition to tax under section 6651(a)(1) is 5 percent of the "amount required to be shown as tax on * * * [the] return."  Section 6651(b)(1) provides that, for purposes of computing the addition to tax, "the amount of tax required to be shown on the return shall be reduced by the amount of any part of the tax which is paid on or before the date prescribed for payment of the tax".  The original return filed by petitioners for 1989 showed a tax of $11,670 and Federal income taxes withheld of $90.  That left a balance due of $11,580.  The return, as noted earlier, was filed on October 30, 1990.  In the amended return filed by petitioners for 1989, on which the foreclosure loss was claimed, petitioners' tax was shown to be $6,250 rather than $11,670, as shown on the original return. Petitioners presented no evidence to show that "the amount of tax required to be shown on the return" was paid on or before the due date prescribed for payment of the tax, except for $90 in withheld taxes.  It is evident, and the Court holds, that petitioners are not entitled, under section 6651(b)(1), to a reduction in the amount of tax required to be shown on the return by the amount of taxes they paid when they filed their delinquent return for 1989.  To determine the amount of the addition to tax under section 6651(a)(1) and the amount of the credit or refund,

- 18 -

Decision will be entered under Rule 155.